Argued and submitted August 31, 2004, reversed February 9, 2005

STATE OF OREGON,
*Respondent,*

*v.*

ELIZABETH ANN BIGELOW,
*Appellant.*

C970507CR; A119915

106 P3d 162

Ernest G. Lannet, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Paul Smith, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kathleen Cegla, Assistant Attorney General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals a judgment of conviction for criminal nonsupport. ORS 163.555.[1] She assigns error to the trial court's denial of her motion to dismiss on speedy trial grounds. Defendant argues that, under ORS 135.747,[2] Article I, section 10, of the Oregon Constitution,[3] and the Sixth Amendment to the United States Constitution,[4] the trial court should have dismissed the charges against her because there was a 66-month delay between her indictment and trial. We reverse.

In 1980, defendant married Darr and, in 1983, gave birth to their daughter. Defendant and Darr were divorced in 1988, and defendant moved to New Hampshire. The dissolution judgment required defendant to pay child support to Darr for their daughter in the amount of $100 per month.

As do all speedy trial cases, this case hinges on the timeline. On February 27, 1997, a Washington County grand jury indicted defendant for criminal nonsupport related to her nonpayment of child support from February 1995 to January 1997.[5] The Washington County District Attorney designated the indictment as secret. On March 3, 1997, the Washington County Circuit Court issued an arrest warrant.

---

[1] Under ORS 163.555, "[a] person commits the crime of criminal nonsupport if, being the parent, lawful guardian or other person lawfully charged with the support of a child under 18 years of age, born in or out of wedlock, the person refuses or neglects without lawful excuse to provide support for such child."

[2] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

[3] Article I, section 10, of the Oregon Constitution provides that "[n]o court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[4] The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," among other things.

[5] In fact, the grand jury indicted defendant on three counts of criminal nonsupport. The other two counts related to two periods of nonpayment during 1994. The trial court granted defendant's motion for a judgment of acquittal on those two counts, so only the offense related to the 1995 to 1997 time period is before us.

The warrant accurately reflected defendant's street address in Weare, New Hampshire, where she had resided since December 1988. On March 9, 1997, the Records Division of the Washington County Sheriff's Office entered a nationwide warrant for defendant's arrest into two computer databases: the Law Enforcement Data System (LEDS) and the National Crime Information Center (NCIC). The purpose of entering the warrant into those systems was to alert any law enforcement agency that had contact with defendant that an Oregon court had issued a warrant for her arrest.

Between 1997 and 2001, the only action that the state took on the nationwide arrest warrant was to check every three months to determine whether defendant had changed her address. In April 2001, the Child Support Division gave the Washington County Sheriff's Office a new street address for defendant in Cross, South Carolina, where she had moved in January 2001. In June 2001, the sheriff's office updated the nationwide arrest warrant with the South Carolina address and sent out an "attempt to service." That attempt failed, however, because the system could not find "a computer location" for Cross, South Carolina.

In September 2001, acting on a tip that defendant, a truck driver by trade, had been seen at a Salem truck stop and was headed north, the Washington County Sheriff's Office contacted Multnomah County dispatch to attempt service of the arrest warrant at area truck stops. The Washington County Sheriff's Office received no response to that request.

On October 31, 2001, an Oregon State Trooper stopped the driver of a tractor and trailer rig on Interstate 84 for speeding. The driver was defendant. She gave the trooper her New Hampshire driver license. When the trooper ran a routine check on defendant's name, he learned of the outstanding 1997 warrant and arrested defendant on it.

On November 19, 2001, defendant was arraigned on the indictment and a pretrial conference was set for March 11, 2002. At that conference, the court scheduled the trial for August 22, 2002. Defendant thereafter filed a motion to dismiss, arguing that the multiyear delay between her indictment and trial violated the speedy trial requirements of ORS

135.747 and the Oregon and United States constitutions. Because it received the motion on the eve of trial, the state persuaded the court to reschedule the trial to August 29, 2002. On that date, 66 months after it had indicted her, the state finally tried defendant. After a bench trial, the court convicted defendant of criminal nonsupport.

Before trial that day, the court denied defendant's motion to dismiss the indictment on speedy trial grounds. The court concluded that defendant had not demonstrated the prejudice required for dismissal on constitutional grounds and that her statutory argument failed because the delay between indictment and trial was reasonable under the circumstances, especially in light of the fact that the state had entered the warrant in LEDS and NCIC. Defendant assigns error to that ruling.

Defendant presents both statutory and constitutional arguments. As we have repeatedly noted, the remedy for the deprivation of a speedy trial is more complete under Article I, section 10, and the Sixth Amendment than that available under ORS 135.747. That is because a dismissal on constitutional grounds is with prejudice, *State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000), whereas, depending on the nature of the crime and whether the statute of limitation has run, the state may refile charges dismissed under ORS 135.747. *See* ORS 135.753(2) (providing that Class A misdemeanors and felonies may be reprosecuted if dismissed under ORS 135.747, whereas Class B or C misdemeanors may not). But in this case, although ORS 135.747 itself would not bar reprosecution of defendant for a Class C felony such as criminal nonsupport, enough time has passed that reprosecution is barred by the applicable statute of limitation. *See* ORS 131.125(6)(a). The act that constitutes the charged offense in this case was completed in January 1997. Even assuming that the statute of limitation for this felony—three years—could be extended by the maximum three years under ORS 131.155 because of defendant's out-of-state residence, more than six years have passed since the offense was committed. Thus, complete relief is, as a practical matter, available to defendant under the statute, so we will begin our analysis there.

■      ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

As we explained in *State v. Rohlfing*, 155 Or App 127, 130, 963 P2d 87 (1998), "[t]he statute applies to delay between indictment and arrest, as well as to delay between arrest and trial." The trial court concluded that the 66-month delay between defendant's indictment and her trial was reasonable and denied her motion to dismiss. We review that decision for legal error. *Id*. at 129.

■■      The test under ORS 135.747 for whether a delay is reasonable has two steps. First, we ask whether defendant caused or consented to the delay. *State v. Johnson*, 193 Or App 250, 254, 90 P3d 4, *modified and adh'd to as modified on recons*, 194 Or App 28, 92 P3d 766, *rev allowed*, 337 Or 327 (2004). If she did, then that is the end of the matter. If she did not, then we turn to the second query: "[W]hether the delay was reasonable considering all of the circumstances." *Id*. at 256. We will consider circumstances such as "the nature of the charges, the length of the delay, and the state's explanation—or lack of one—for failing to bring the case to trial." *Id*. However, true to the language of the statute, we must remember that "[i]t is the 'period of time' that must be 'reasonable,' not the cause of the delay or its effect on the defendant." *State v. Adams*, 193 Or App 469, 474, 89 P3d 1283, *rev allowed*, 337 Or 476 (2004) (quoting ORS 135.747).

The state concedes that defendant neither caused nor consented to the delay, which is a well-taken concession. Defendant had no knowledge of the indictment or the outstanding warrant until she was arrested after being pulled over for speeding in October 2001, rendering it all but impossible for her to have played a role in the delay. The state further concedes that, "without a valid explanation for the delay, a delay of 66 months between indictment and trial would require the trial court to dismiss the charges under ORS 135.747." The state argues, however, that it has a valid explanation that makes the delay of over five and one-half

years reasonable. Specifically, it argues that defendant was out of state and that its entry of the arrest warrant into the national law enforcement databases as a means to bring her to trial was reasonable.

The state relies on *State v. Pirouzkar*, 98 Or App 741, 780 P2d 802 (1989), *rev den*, 309 Or 333 (1990). In that case, we held that a four-year delay was not unreasonable where the defendant had moved to California, the state did not know where the defendant was living, and the state had entered arrest warrants into NCIC. *Id*. at 744.[6] Defendant rightfully retorts that *Pirouzkar* is distinguishable because there the state did not know where to find the defendant. Here, the state had defendant's street address. We agree with defendant. When the state has the address of a defendant, even if the address is in another state, the state may be required to do more to avoid causing an unreasonable delay than to enter a warrant into computer databases and hope that the defendant will "reveal [herself] by stumbling over the trip wires put in place through" those databases. *United*

---

[6] Strictly speaking, *Pirouzkar* was not an ORS 135.747 case. Instead, at issue in that case was ORS 131.135, which provides that a prosecution is commenced, and the statute of limitation is therefore tolled, "when a warrant or other process is issued, *provided that the warrant or other process is executed without unreasonable delay*." (Emphasis added.) Nonetheless, in *Rohlfing*, undisputedly a statutory speedy trial case, we discussed the unreasonable delay analysis from *Pirouzkar* in the context of ORS 135.747 without questioning whether the two analyses were identical. They may not be. We have equated the test under ORS 131.135 with the test under Article I, section 10, of the Oregon Constitution. *State v. Chinn*, 115 Or App 662, 665, 840 P2d 92 (1992). At one time, the statutory speedy trial analysis and the constitutional speedy trial analysis were understood to be identical. *State v. Jackson*, 228 Or 371, 377-78, 365 P2d 294 (1961).

However, the Supreme Court recognized in *State v. Emery*, 318 Or 460, 468, 869 P2d 859 (1994), that constitutional speedy trial jurisprudence had evolved since *Jackson*, whereas the language of the statute had remained the same. After considering the language of ORS 135.747 in light of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), the court concluded that ORS 135.747 required a different test from that of Article I, section 10, and that prejudice was not an element of the statutory analysis. *Emery*, 318 Or at 470.

The point of this digression is that, although prejudice to the defendant is no longer a requirement under ORS 135.747, no court has addressed the issue under ORS 131.135. *See State v. Huskey*, 171 Or App 550, 556, 17 P3d 541 (2000) (leaving "for another day the question of whether the *Emery* rationale also applies to ORS 131.135"). Thus, the analysis under ORS 135.747 may not be identical to the analysis under ORS 131.135. Nonetheless, prejudice was not at issue in *Pirouzkar*, and that case remains persuasive on the question whether a pretrial delay is reasonable under ORS 135.747.

*States v. Knop*, No 88-20015-BC, WL 22327826 at *7 (ED Mich Oct 6, 2003).

*State v. Garcia*, 68 Or App 58, 680 P2d 704 (1984), is instructive on that point. In *Garcia*, the defendant was accused of knowingly purchasing two stolen guitars and given a citation. On December 9, 1981, he failed to appear on the citation. Within a few days, he was indicted for theft in the first degree.

In July 1982, the defendant was arrested in Texas on an unrelated matter. Despite learning of the defendant's arrest and location, the district attorney did not request extradition. In the spring of 1983, the defendant returned to Oregon and was arrested.

In analyzing the defendant's constitutional speedy trial argument, and specifically the reason for the delay, we stated that "[t]he state bears some responsibility, because it declined to extradite defendant after his arrest in Texas." *Id.* at 61. Although we ultimately concluded that the delay factor was neutral because the defendant was partially responsible for it, we nonetheless faulted the state for not seeking extradition.

Here, too, we fault the state for not seeking defendant's extradition. From 1997 to 2001 defendant lived in New Hampshire and the state knew her address. New Hampshire law authorizes the Governor of that state to "surrender, on demand of the executive authority of any other state," persons accused of committing a crime in a third state, "even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom." NH Rev Stat Ann § 612:6. Granted, the statute appears to give the Governor discretion whether to surrender someone to another state. Nonetheless, the state never asked New Hampshire to arrest and extradite defendant.

Nor did the state take any other actions that might have been available to it. For example, the record shows that during 2000 the state had repeated contact with the New Hampshire Department of Health and Human Services regarding an ongoing child support enforcement action against defendant that was pending in New Hampshire.

Despite that cooperation on the civil enforcement of defendant's child support obligations, the State of Oregon made no effort to ask New Hampshire authorities to cooperate with it on the criminal enforcement of the same obligations.

Under those circumstances, we hold that the 66-month delay between defendant's indictment and her trial was unreasonable under ORS 135.747. Thus, the trial court erred in denying her motion to dismiss. Having resolved the pretrial delay issue on statutory grounds, we do not address defendant's constitutional arguments.

Reversed.