Argued and submitted September 9, 2005, vacated and remanded
January 18, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# YVONNE MARIE AYERS,
*Appellant.*

## 9602-30961; A119880

126 P3d 1241

Erin G. Rohr argued the cause for appellant. With her on the briefs was Chilton, Ebbett & Rohr, LLC.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals from a judgment of conviction on one count of being a felon in possession of a firearm. ORS 166.270. She assigns error to the trial court's denial of her motion to dismiss based on an alleged denial of her rights to a speedy trial under Article I, section 10, of the Oregon Constitution, the Sixth Amendment to the United States Constitution, and ORS 135.747. This case is remarkable because virtually all of the nearly 80-month interval between defendant's indictment and her trial occurred after defendant absconded and later committed a crime in Washington State for which she was, consequently, convicted and incarcerated in a Washington correctional facility. Accordingly, because (as described below) we reject defendant's constitutional speedy trial arguments, this case presents an issue of first impression in Oregon: What is the proper relationship between ORS 135.747 and certain provisions of the Interstate Agreement on Detainers (IAD), ORS 135.775 to 135.793? We conclude that the correct reconciliation of those statutes in this case implicates issues of fact that have not yet been determined. Consequently, we vacate defendant's conviction and remand.

Except as specifically noted, the following matters are uncontroverted. On February 15, 1996, defendant was indicted in Multnomah County on two counts of being a felon in possession of a firearm, ORS 166.270, and two counts of possession of a controlled substance, ORS 475.992(4)(a), (b). Defendant was arraigned on February 23, and, on March 5, she entered into a pretrial release agreement with the state. Shortly thereafter, defendant absconded, and, on March 18, 1996, the Multnomah County Circuit Court issued a warrant for her arrest for failure to comply with the terms of her conditional release.

Oregon authorities were unaware of defendant's whereabouts for approximately two years.[1] However, in March 1998, Washington authorities notified the Multnomah County District Attorney's Office that defendant

---

[1] Defendant does not contend that Oregon authorities could reasonably have located her during that time.

had been charged with crimes and was in custody in Pierce County, Washington. Shortly thereafter, the district attorney's office sought and obtained a governor's warrant to initiate defendant's extradition. *See* ORS 133.743 - 133.857. On June 16, 1998, Washington authorities notified the Multnomah County Sheriff's Office that defendant had been convicted and sentenced to 109 months' imprisonment and that she was being transferred to the state women's correctional center in Gig Harbor, Washington. The Washington notification also stated that the extradition proceeding was being dismissed and that Oregon officials should lodge a detainer against defendant at the Gig Harbor facility. On June 17, defendant was moved to Gig Harbor, and, on June 18, the extradition proceeding was dismissed.

When, or whether, Oregon authorities ever lodged a detainer against defendant is in dispute. In responding to defendant's speedy trial motion, the state offered evidence, in the form of a cover letter retained in the files of the Multnomah County Sheriff's Office, indicating that that office had sent a detainer to the Gig Harbor facility on June 22, 1998. That cover letter was retained in the file without any attendant documents. However, the letter indicates that other items, possibly including a detainer, were sent with it. The Sheriff's Office records technician who was responsible for processing such matters testified that the "detainer cover letter" and its attached documents had never been returned as undelivered and that it is not uncommon for correctional facilities to receive such letters without confirming receipt.

In addition to that cover letter, defendant's own testimony arguably indicated that a detainer had been lodged at the Gig Harbor facility at some time before April 2002. According to defendant, on April 18, 2002, nearly four years into her term at Gig Harbor, defendant asked the institutional records manager, Randy Vickers, if there were any detainers that had been lodged against her. Defendant testified that, when Vickers looked at her records, he was "in awe" and immediately gave defendant four forms, captioned "Agreement on Detainers" and numbered "I" through "IV," which he assisted defendant in completing, including completing portions of two of the forms himself. Form I informed defendant of the charges against her in Multnomah County

and explained that she had the right under the IAD to request final disposition of those charges and that her trial would begin within 180 days of her request being received by the appropriate prosecuting officers. Forms III and IV provided other information required by the IAD.

Conversely, defendant also presented testimony indicating that Multnomah County authorities had never actually lodged a detainer against her while she was at the Gig Harbor facility. In particular, an investigator with the (Portland) Metropolitan Public Defenders' Office testified that she had contacted Vickers in August 2002, requesting copies of any detainer that had been placed on defendant:

"[Vickers] said a Governor's warrant from Oregon came with [defendant] when she went from Pierce County to Gig Harbor, where she was incarcerated. And that normally when someone arrives on a warrant they notify the requesting state and ask the requesting state to send detainer information, if it wishes.

"Q. Why do they ask about the detainer information?

"A. I think that's per the interstate compact. He says for untried Indictments they need certain information before they'll act.

"Q. Okay. Did Mr. Vickers state whether a detainer had been placed on [defendant] in 1998?

"A. He did not say that a detainer had been filed on or lodged against [defendant]."

On cross-examination, when asked "how thoroughly" she had investigated the existence of a detainer, the witness responded:

"I thought I did a fairly thorough job through Washington. I sent them a request, asked them for a copy of all their records, and they sent me everything back that they said was in their file, and the detainer was not in that."

At least one of the IAD forms that defendant and Vickers completed on April 18, 2002, also arguably corroborates the view that, as of that date, no detainers had been lodged against defendant at Gig Harbor. Vickers completed Form III and, in response to item number 8 of that form, which directs the custodial authority to list any "[d]etainers

currently on file against this inmate," Vickers wrote, "None Known."[2]

In sum, the evidence is in conflict as to (1) whether Oregon authorities ever lodged a detainer against defendant while she was at Gig Harbor; (2) if such a detainer was lodged, when that occurred; and (3) when, if ever, defendant should reasonably have known of the existence of a detainer. As explained below, the resolution of those matters bears directly on the applicability of the IAD and, in turn, on the determination of whether defendant is entitled to dismissal under the speedy trial statute, ORS 135.747. *See* 203 Or App at 703-05.

In all events, it is undisputed that, long before April 2002, defendant was well aware of the continued pendency of the charges against her in Oregon. Defendant testified that she always wanted to resolve those charges but that she never spoke to an attorney about how to do so. According to defendant, "what is known [at the prison] is you go to the law library, you fill out [a motion form] and you send a 180-day notice to the state to let them know to take some sort of action."[3] Consequently, shortly after defendant arrived at the Gig Harbor facility, she asked the attendants at the prison library for assistance and they gave her a form titled, "Motion for Speedy Trial or Speedy Disposition of Warrants, Information." Although defendant filled out that motion on July 2, 1998, she did not mail it to the Multnomah County Circuit Court until October 1999.[4]

---

[2] It is unclear why, if there were no detainers lodged against defendant, Vickers provided her with IAD forms. Article III of the IAD, ORS 135.775, becomes operative only if "there is pending in any other party state any untried indictment * * * on the basis of which *a detainer has been lodged against the prisoner*[.]" (Emphasis added.)

[3] As amplified below, the procedure that defendant described generally conforms to one of the procedures prescribed under the IAD.

[4] The record is unclear regarding whether the district attorney's office received defendant's motion. The Oregon Judicial Information Network shows that the court received the motion on October 8, 1999, and that it was forwarded to the district attorney's office. However, the district attorney's office claims to have never received it. In all events, it is undisputed that that motion did not satisfy the requisites for a request for final disposition pursuant to Article III of the IAD. Consequently, for reasons explained below, it is ultimately immaterial to our disposition of this appeal whether Multnomah County prosecutors actually received that document.

Notwithstanding that mailing, from October 1999 until April 18, 2002, when defendant and Vickers completed the IAD forms, neither defendant nor the state made any further attempt to commence defendant's trial. After completing the IAD forms, defendant mailed them to Multnomah County, and they were received on April 25, 2002. On ober 3, 2002, less than 180 days later, defendant's trial began.

At trial, defendant moved to dismiss on speedy trial grounds pursuant to Article I, section 10, of the Oregon Constitution, the Sixth Amendment to the United States Constitution, and ORS 135.747.[5] Defendant conceded that the delay between February 1996 and March 1998 was the result of her flight from Oregon. However, she argued that the delay between March 1998, when Oregon officials first learned of her whereabouts, and October 2002, when her trial commenced, was an unreasonable delay attributable to the state. Further, in support of her constitutional speedy trial argument, defendant contended that she had suffered prejudice from the delay in that she had experienced anxiety and uncertainty and that her defense was impaired.

The trial court denied defendant's motion. The court concluded that the four-year delay was not unreasonable because defendant had absconded after her indictment and was incarcerated in another state and, further, with respect to defendant's constitutional arguments, that defendant had not been actually prejudiced by the delay.

Defendant was subsequently convicted, following a stipulated facts trial, of one count of being a felon in possession of a firearm. ORS 166.270. The court sentenced defendant to 10 months' imprisonment, to run concurrently with her remaining incarceration in Washington, and 24 months'

---

[5] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

The Sixth Amendment to the United States Constitution provides, in part, that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *." The text of ORS 135.747 is set out below. 203 Or App at 693

post-prison supervision. Defendant now appeals, assigning error to the denial of her motion to dismiss.[6]

On appeal, defendant again concedes that the two-year delay between March 1996 and March 1998 was attributable to her flight from Oregon. However, she argues that, once Oregon officials knew her location in March 1998, the state was obligated to bring her to trial expeditiously. With respect to her constitutional speedy trial contentions, defendant acknowledges that the 55-month interval between March 1998 and October 2002 was not "manifestly excessive." However, defendant contends that the totality of the circumstances—the length of the delay, the reasons for the delay (including the state's alleged failure to act on defendant's 1999 request for trial), and alleged prejudice to defendant from the delay—warranted dismissal under Article I, section 10, or the Sixth Amendment. Alternatively with respect to ORS 135.747, defendant contends that the 55-month delay between March 1998 and October 2002 was unreasonable. Defendant argues further that, even if she could be deemed responsible for the period up to October 1999, when defendant sent her "motion for speedy trial" to the Multnomah County Circuit Court, the delay of three years would still be unreasonable.

The state offers two overarching responses. First, with respect to constitutional speedy trial protections, there was ample justification for any delay and, in all events, defendant failed to demonstrate any cognizable prejudice from the delay—*i.e.*, defendant had not been subjected to substantial pretrial incarceration; the trial court implicitly rejected defendant's claims of delay-related anxiety; and defendant's presentation of her defense was not impaired because of the delay.

Second, with respect to the asserted violation of statutory speedy trial protections, the state contends that ORS

---

[6] Defendant raised a second assignment of error, in which she argued that ORS 166.270 violated her right to bear arms, as protected under Article I, section 27, of the Oregon Constitution. At oral argument, counsel acknowledged that *State v. Hirsch/Friend*, 338 Or 622, 114 P3d 1104 (2005), is dispositive and withdrew that assignment of error.

135.747 is inapposite because, given that defendant was incarcerated out of state, the "trial demand" provisions of the IAD are, in these circumstances, more "particular" than ORS 135.747 and, thus, controlling. The state points, particularly, to Article III of the IAD, ORS 135.775 (reproduced in part below), which permits an incarcerated defendant to demand a final disposition within 180 days of pending charges that are the subject of a detainer. In the state's view, those provisions are exclusive in the circumstances presented here—and, thus, because defendant was, in fact, tried within 180 days after Oregon authorities received her proper IAD trial demand, there was no statutory speedy trial violation. Finally, the state alternatively argues that, even if ORS 135.747 does apply in these circumstances, the delay here was not "unreasonable" because it resulted from defendant's flight to Washington and commission of crimes in that state.

■       We begin by addressing defendant's constitutional arguments. *See State v. Harberts*, 331 Or 72, 81, 11 P3d 641 (2000) (explaining that it is appropriate to deviate from the usual practice of addressing statutory claims first where a successful constitutional claim would result in the more complete relief of dismissal with prejudice). In *Harberts*, the court summarized the inquiry for purposes of Article I, section 10:

> "Article I, section 10, imposes on the state a mandatory directive to bring a defendant to trial 'without delay.' Determining whether the state did so is a fact-specific inquiry that requires the court to examine the circumstances of each particular case. Under our present-day jurisprudence, speedy-trial claims are guided by considering the length of the delay and, if it is not manifestly excessive or purposely caused by the government to hamper the defense, the reasons for the delay, and prejudice to the defendant."

331 Or at 88; *see also State v. Fleetwood*, 186 Or App 305, 313-14, 63 P3d 42, *rev den*, 336 Or 125 (2003) (recapitulating *Harberts*'s formulation). The Sixth Amendment speedy trial analysis requires consideration of the same factors. *See Fleetwood*, 186 Or App at 322 (citing *Barker v. Wingo*, 407 US 514, 528-29, 92 S Ct 2182, 33 L Ed 2d 101 (1972)).

We reject defendant's constitutional contentions. As noted, defendant acknowledges that the delay here was neither "manifestly excessive" nor "purposely caused by the government to hamper the defense." *Harberts*, 331 Or at 88. Further, even assuming that the operative period of "delay" was as long as four years, and even assuming for the sake of argument (pending further discussion below) that the state's failure to bring defendant to trial was entirely unjustified, defendant failed to demonstrate that she had suffered any of the three forms of cognizable delay-related prejudice, *viz.*, excessive pretrial detention, anxiety and distress, or impairment of the defense. *See State v. Harman*, 179 Or App 611, 617-21, 40 P3d 1079 (2002) (citing *State v. Emery*, 318 Or 460, 473, 869 P2d 859 (1994) (identifying cognizable species of delay-related prejudice)).

Defendant proposes two bases for finding prejudice in this case. First, defendant asserts that she experienced anxiety and nervousness during the pendency of the case. Second, defendant argues that certain evidence relating to the circumstances of her arrest is no longer available, impairing her ability to challenge the lawfulness of the discovery of controlled substances among her possessions.[7] We agree with the trial court that defendant failed to establish cognizable prejudice on either basis.

Defendant cites no reported case—and we are unaware of any—in which an Oregon court has dismissed a prosecution with prejudice where the period of delay was substantial (but not "manifestly excessive") and arguably unjustified, but the defendant made no showing of cognizable prejudice. *See Fleetwood*, 186 Or App at 319-22 (canvassing case law); *Harman*, 179 Or App at 617-21 (same). Nor are we aware of any such authority under the Sixth Amendment. Accordingly, defendant was not entitled to dismissal with prejudice on constitutional grounds.

We turn, then, to defendant's statutory arguments. As noted, defendant invokes the generic speedy trial statute,

---

[7] Defendant contends that she has been prejudiced by the intervening loss of the certification and training records for a drug-sniffing dog. However, the dog's handler testified to the material information that would have been contained therein.

ORS 135.747, and the state responds that that statute is inapposite because this case is controlled by the more "particular" trial-demand-related provisions of the IAD. Thus, this case requires us to analyze the proper interplay between those statutory schemes. *Accord City of Lowell v. Wilson*, 197 Or App 291, 306, 105 P3d 856, *rev den*, 339 Or 406 (2005) (stating that, in "many" cases, "the application of the maxim that a 'particular' statute controls over a more 'general' statute * * * becomes a circular exercise"); *Oregonians for Sound Economic Policy v. SAIF*, 187 Or App 621, 631, 69 P3d 742, *rev den*, 336 Or 60 (2003) (that maxim of statutory construction is "subject to manipulation" and "can produce different results depending on which statute is characterized as the specific and which as the general").

■      We begin by examining the "text in context" of the purportedly "inconsistent" statutory provisions. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993). ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

Article III of the IAD, ORS 135.775, provides, in part:

> "(a)   Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and *whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of imprisonment and the request of the prisoner for a final disposition to be made of the indictment, information or complaint*: Provided, that for good cause shown in open court, the prisoner or the counsel of the prisoner being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. * * *
>
> "* * * * *

"(c) The warden or other official having custody of the prisoner shall promptly inform the prisoner of the source and contents of any detainer lodged against the prisoner and shall also inform the prisoner of the right to make a request for final disposition of the indictment, information or complaint on which the detainer is based."[8]

(Emphasis added.) Article V(c) of the IAD provides that, if the defendant inmate is not brought to trial within the period provided in Article III, the underlying indictment, information, or complaint shall be dismissed "with prejudice."

Thus, under ORS 135.747, the state must bring a criminal defendant to trial within a "reasonable period of time," and, if it does not do so, the defendant is entitled to a dismissal without prejudice of the pending charges. *See, e.g., Emery*, 318 Or at 469. The statute's reference to "a defendant charged with a crime" is unrestricted, without any qualification for such defendants who are presently incarcerated in Oregon or elsewhere. For its part, the IAD *does* explicitly pertain to incarcerated defendants who have not yet been tried on pending criminal charges, *viz.*, persons incarcerated in one jurisdiction who have been charged with crimes in another. Under Article III, if the inmate makes a proper request for a final disposition, he or she must "be brought to trial within 180 days" of the receipt of that request; if that does not occur, those charges must be dismissed with prejudice.

It is initially tempting to discard, as barely colorable, the state's assertion of some "conflict" or "inconsistency" between ORS 135.747 and the IAD provisions, as applied in these circumstances, with the "particularity" of the latter trumping the former. After all, ORS 135.747, which applies to all "defendant[s] charged with a crime," confers one type of remedy (dismissal *without* prejudice) in a broad range of circumstances. Conversely, Articles III and IV of the IAD, which

---

[8] In contrast to the inmate-initiated process described in Article III, Article IV of the IAD describes the process by which the jurisdiction that has lodged the detainer (the "receiving state") can secure the inmate-defendant's attendance for trial. Under Article IV(c), except upon a showing of good cause, "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state[.]"

apply to a limited group of defendants (defendants incarcerated in another jurisdiction), confer a different remedy (dismissal *with* prejudice) in narrowly described circumstances. Thus, it would seem that each statute can be given effect without offending the other.

It is not quite so simple. The complication lies in context and in decisions construing and applying the proper relationship between ORS 135.747 (or its direct statutory antecedents) and statutes analogous to the IAD provisions, specifically ORS 135.760 to 135.765.

ORS 135.760, the "intrastate" analog to the "trial demand" provisions of the IAD, provides:

"(1) Any inmate in the custody of the Department of Corrections or of the supervisory authority of a county * * * against whom there is pending at the time of commitment or against whom there is filed at any time during imprisonment, in any court of this state, an indictment, information or criminal complaint charging the inmate with the commission of a crime, may give written notice to the district attorney * * * to prosecute and bring the inmate to trial on the charge forthwith.

"(2) The notice provided for in subsection (1) of this section shall be signed by the inmate and set forth the place and term of imprisonment. A copy of the notice shall be sent to the court in which the inmate has been charged by indictment, information or complaint."

ORS 135.763 provides:

"(1) The district attorney, after receiving a notice requesting trial under ORS 135.760, *shall, within 90 days of receipt of the notice, bring the inmate to trial* upon the pending charge.

"(2) The court shall grant any reasonable continuance with the consent of the defendant. Notwithstanding the defendant's lack of consent, the court may grant a continuance on motion of the district attorney or on its own motion, for good cause shown. The fact of imprisonment is not good cause for the purposes of this subsection."

(Emphasis added.) Finally, ORS 135.765(1) provides:

> "On motion of the defendant or the counsel of the defendant, or on its own motion, the court shall dismiss any criminal proceeding not brought to trial in accordance with ORS 135.763."

As under the IAD, a dismissal under ORS 135.765(1) is a dismissal of the underlying charges with prejudice. *State v. Waechter*, 163 Or App 282, 287-94, 986 P2d 1281 (1999).

In a series of related cases, the Oregon Supreme Court and our court have held that an inmate defendant's failure to make a speedy trial request under ORS 135.760 (or its antecedent), effectively "waived" the defendant's protections under ORS 135.747 (or its antecedent). *See State v. Vawter*, 236 Or 85, 87-89, 386 P2d 915 (1963); *Bevel v. Gladden*, 232 Or 578, 376 P2d 117 (1962); *State v. Downing*, 4 Or App 269, 478 P2d 420 (1970).

In *Bevel*, a post-conviction case, the petitioner sought to challenge a forgery conviction, arguing that it had been obtained in violation of his speedy trial rights under *former* ORS 134.120 (1957), which was the direct antecedent to the present ORS 135.747.[9] There, the petitioner had been serving a sentence in Baker County when he was charged in Douglas County by way of two separate indictments, each of which alleged a single count of forgery. The petitioner (as criminal defendant) made a 90-day speedy trial demand with respect to one of the indictments pursuant to *former* ORS 134.510 (1957), the antecedent to the present ORS 135.760.[10] However, the petitioner did not make a similar demand with respect to the other indictment. Ultimately, the indictment that had been the subject of the petitioner's 90-day speedy trial demand was dismissed for other reasons, and the petitioner was convicted of the forgery charged in the other indictment. That conviction was the object of the petitioner's post-conviction challenge. *Bevel*, 232 Or at 580-83.

The post-conviction court rejected the defendant's argument premised on *former* ORS 134.120 (1957), and the Supreme Court affirmed. In so holding, the court emphasized

---

[9] *Former* ORS 134.120, *renumbered as* ORS 135.747 (1973). For our purposes, the former version of the statute did not differ materially from the present statute.

[10] *Former* ORS 134.510, *renumbered as* ORS 135.760 (1973).

that, although the petitioner and his criminal defense counsel had obviously been aware of the 90-day speedy trial provisions of *former* ORS 134.510 to 134.530 (1957)—because they had made such a demand with respect to the other indictment—they had failed to invoke those provisions with respect to the indictment that resulted in the challenged conviction. That failure, the court concluded, effected a waiver of the protections of *former* ORS 134.120 (1957):

"We hold that when a criminal defendant, represented by counsel, chooses not to avail himself of a statutory procedure under which he might have obtained the dismissal of an indictment, such inaction amounts to a waiver of the question that might have been raised."

*Bevel*, 232 Or at 583.

*Bevel* is opaque. However, in *Vawter*, the statutory speedy trial issue was more clearly presented and addressed. In *Vawter*, the defendant was incarcerated at the Oregon State Penitentiary when he was indicted on charges in Multnomah County. 236 Or at 86-87. Multnomah County filed an appropriate detainer. *Id.* at 87. The defendant did not make a 90-day speedy trial request under *former* ORS 134.510 (1963). Rather, several months after the defendant had been indicted, he moved for dismissal under Article I, section 10, and *former* ORS 134.120 (1963). The trial court denied the defendant's motion to dismiss, and the Supreme Court affirmed that denial.

In addressing the defendant's asserted entitlement to dismissal under *former* ORS 134.120 (1963), the court observed:

"Contrary to the rule in most of the jurisdictions of the country, this court has consistently held that it is not incumbent upon the accused to demand a trial or take affirmative action to enforce his right to a speedy trial. But in 1955 the legislative assembly adopted a different rule for a defendant who is imprisoned in the Oregon State Penitentiary or the Oregon State Correctional Institution for another offense, Oregon Laws 1955, Chapter 387, codified as sections 134.510, 134.520, and 134.530, Oregon Revised Statutes.

"* * * Under this statute an accused confined in one of the penal institutions on another charge may give written notice to the district attorney to bring him to trial and if this is not done within 90 days after receipt of the notice the criminal proceeding must be dismissed. In [*Bevel*], we held that when a criminal defendant, represented by counsel, chooses not to avail himself of this procedure, he waives the right to secure dismissal of the indictment because of undue delay. * * * It so happened that in the *Bevel* case the prisoner was represented by counsel, but the reference to that fact in the opinion cannot be taken as a decision that the statute is not applicable to a prisoner who is without counsel. That question is left open."

*Vawter*, 236 Or at 87-89 (footnotes and citations omitted). The court ultimately concluded that, in all events, the period of delay there was not so unreasonable as to offend statutory or constitutional speedy trial protections. *Id.* at 89-97.

Finally, in *Downing*, the defendant was in custody in Multnomah County when prosecutors in Clatsop County filed an information against him. The defendant was subsequently convicted in Multnomah County and incarcerated at the Oregon State Penitentiary. The Clatsop County Sheriff's Office was informed of the defendant's incarceration and immediately placed a detainer on him. *Downing*, 4 Or App at 271.

One year after the filing of the Clatsop County information, the defendant, who was not represented by counsel, moved to dismiss on speedy trial grounds. Before that motion was decided, however, a Clatsop County grand jury indicted the defendant on the same charges, and he again moved to dismiss for lack of a speedy trial. *Id.* at 272. One month later, but approximately 16 months after the original filing of the information, the court appointed counsel for the defendant. That attorney again moved to dismiss on speedy trial grounds. The trial court denied that motion, and the defendant was subsequently convicted. *Id.*

On appeal, we considered, and rejected, the defendant's speedy trial arguments. We began by reiterating the general principles set forth in *Bevel* and *Vawter*:

"[T]he state has a duty to afford the accused a speedy trial and the accused is not required to take affirmative action to enforce this right. The fact that an accused is an inmate of a penal institution * * * does not deprive him of that right. However, in 1955 the Oregon legislature adopted a special procedural requirement for an accused who is an inmate [inside the state]. [Those statutes provide] that an accused confined [in the state] may give written notice to the district attorney to bring him to trial, and if trial is not held within 90 days of receipt of that notice the criminal proceeding should be dismissed. *Should an inmate-accused, represented by counsel, fail to avail himself of this procedure he will be deemed to have waived the right to secure dismissal of an indictment because of unreasonable delay in being brought to trial.*"

*Downing*, 4 Or App at 273 (citations omitted; emphasis added).

■    We noted, however, that no reported decision had addressed the applicability of those principles to an unrepresented inmate—indeed, in *Vawter*, the court had expressly reserved that question. *See Vawter*, 236 Or at 89 ("It so happened that in the *Bevel* case the prisoner was represented by counsel, but the reference to that fact in the opinion cannot be taken as a decision that the statute is not applicable to a prisoner who is without counsel. That question is left open."). We concluded in *Downing* that the "waiver" principles announced in *Bevel* and *Vawter* would apply even to inmate-defendants who were not represented by counsel, but only if the state established that the inmate-defendant had been aware of the entitlement to demand and obtain a trial within 90 days but had failed to make a speedy trial demand:

"No statute of this state can remove or severely restrict [the guarantee of a speedy trial]. However, reasonable statutory procedural requirements may be adopted to implement this constitutional right in the day-to-day administration of justice. ORS 134.510 to 134.530 is such a provision. *Nevertheless, in the absence of a showing that an inmate-accused, who is not represented by counsel, was aware of the special [procedural requirement]*, we think it would not meet the requirements of Oregon Constitution, Art. I, § 10, to determine that he has waived his right to a speedy trial by failing

to avail himself of the rights accorded under those statutes."

*Downing*, 4 Or App at 273-74 (emphasis added). Thus, an unrepresented inmate-defendant must knowingly fail to invoke the 90-day trial demand provision of ORS 135.760 to be deemed to have "waived" the protections of ORS 135.747.

■     By logical and contextual extension, the same principle should govern the relationship between the trial demand provisions of the IAD and ORS 135.747. Like ORS 135.760, Article III(a) of the IAD provides a mechanism for an inmate to request a final disposition of untried charges. Further, both statutory schemes require the appropriate prosecuting authority to bring the accused inmate to trial within a specified amount of time after receiving the trial demand or, failing that, to suffer dismissal with prejudice of the charges. *Compare* ORS 135.765(1), *with* IAD Article V(c). Thus, under the "waiver" rubric employed in *Bevel*, *Vawter*, and *Downing*, if an inmate incarcerated outside of Oregon is represented by counsel, or is unrepresented but knowingly fails to demand trial pursuant to Article III(a) of the IAD on pending Oregon charges, that inmate will be deemed to have "waived" the protections of ORS 135.747.[11]

---

[11] Our reasoning and conclusion in that regard comport with the analysis of courts in two other jurisdictions that have addressed the proper relationship between the trial demand provisions of Article III of the IAD and state statutory speedy trial provisions. *See State v. Ward*, No. CA99-12-114, WL 1370993 (Ohio App 12 Dist, Sept 25, 2000); *People v. MacDonald*, 36 Cal App 3d 103, 111 Cal Rptr 266 (1973), *rev den* (1974). *MacDonald* is illustrative. There, the court addressed the issue of "whether the right to a speedy trial was violated by allowing the defendants to remain in custody in Maryland until they made a request for disposition of California charges pursuant to [the IAD]." *Id.* at 105, 111 Cal Rptr at 266-67. Because no reported California decision had ever addressed the interplay between the IAD and state speedy trial provisions, the court relied on analogous case law addressing California statutes governing "the right of a California prisoner to demand trial [within 90 days] of charges pending within the state." *Id.* at 113, 111 Cal Rptr at 272. Under that case law, the California Supreme Court had concluded that deferring trial until an inmate defendant demanded trial did not violate the state's general speedy trial provisions. *Id.* at 114, 111 Cal Rptr at 272 (citing *People v. Godlewski*, 22 Cal 2d 677, 140 P2d 381 (1943)). Relying on that analogous decisional law, the court in *MacDonald* concluded that, because the defendant there had not made a trial demand under the IAD, his California speedy trial rights had not been violated. *Id.*

A Washington decision, which was subsequently "legislatively overruled," reached a contrary conclusion. *State v. Peterson*, 90 Wash 2d 423, 585 P2d 66 (1978). The court concluded that the IAD is simply a mechanism for interstate transport and "not, strictly speaking, a speedy trial provision." *Id.* at 430-31, 585

■ Two critical caveats qualify our conclusions in that regard. First, there cannot be a "waiver" until there is something to "waive." An inmate cannot make a valid demand under IAD Article III for final disposition of Oregon charges unless Oregon authorities have lodged a valid detainer against the inmate. IAD Article III(a). Thus, without a properly lodged detainer, there can be no "waiver."

■ Second, notwithstanding the pervasive references to "waiver" in *Bevel*, *Vawter*, and *Downing*, we do not understand those cases to adopt some literal and absolute rule by which, regardless of when an inmate-defendant first becomes aware of pending charges and knowingly fails to exercise available rights under ORS 135.760 or Article III of the IAD, that failure precludes the defendant from seeking dismissal based on the *prior* period of delay, no matter how unreasonable. Rather, we understand the "waiver" principle in those cases to preclude the defendant from complaining about any *subsequent* period of delay—*i.e.*, any delay after the knowing failure to make a trial demand—in seeking dismissal under ORS 135.747.

A hypothetical is illustrative. An inmate, incarcerated in another state, is charged with crimes in Oregon. Four years later, Oregon authorities lodge a detainer based on those charges. The inmate, who is unrepresented by counsel, is informed immediately of the detainer and of his rights under Article III of the IAD. Notwithstanding that awareness, the inmate does nothing. Three years later, the inmate is brought to trial on the Oregon charges and moves to dismiss under ORS 135.747. In those circumstances, the inmate-defendant would be deemed to have "waived" any complaint as to the last three years of pretrial delay but could still challenge the reasonableness of the first four years of delay antedating the lodging of the detainer.

■ That understanding of "waiver" as used in *Bevel*, *et al.*, reconciles the analysis and disposition of those cases with

---

P2d at 70. In 1980, the Washington legislature amended the general speedy trial statute to abrogate that result. *See State v. Newcomer*, 48 Wash App 83, 86 n 1, 737 P2d 1285, 1287 n 1 (1987) (explaining the statutory change and consequently refusing to apply the *Peterson* holding). The legislature amended the speedy trial statute so as to exclude any time during which a defendant is incarcerated for another offense. *Id.*

more recent authority addressing statutory speedy trial rights. Rather than applying some completely preclusive, categorical concept of "waiver,"[12] we and the Supreme Court have consistently focused on whether a defendant has caused or consented to particular periods of purportedly unreasonable delay.[13] Indeed, in *State v. Johnson*, 339 Or 69, 94, 116 P3d 879 (2005), the court rejected the state's contention that a defendant is "categorically excluded from the statutory remedy of dismissal [under ORS 135.747] by requesting or consenting to any delay[.]" Rather, the defendant is merely "excluded * * * from a remedy for any delay to which he or she requests or consents." *Id.* at 95. By the same reasoning, an inmate-defendant who fails to avail himself or herself of the entitlement to a speedy trial under Article III of the IAD is not "categorically excluded" from obtaining dismissal under ORS 135.747; rather, the inmate-defendant is merely "excluded from a remedy" for the period of delay following that failure.

We return, then, to the particulars of this case. The balance of our discussion and disposition is framed, and driven, by the following salient considerations:

*First*, it is undisputed that, as early as July 1998, Multnomah County authorities knew that defendant was incarcerated at the Gig Harbor facility.

*Second*, an inmate cannot make an effective request for final disposition under Article III of the IAD until a detainer has been lodged.

*Third*, there is conflicting evidence in this record as to when, if ever, Multnomah County authorities lodged a detainer against defendant at the Gig Harbor facility. *See, e.g.*, 203 Or App at 686-88.

---

[12] No reported decision since *Downing* has applied the *Bevel/Vawter/Downing* "waiver" formulation.

[13] *See, e.g.*, *State v. Davids*, 339 Or 96, 101, 116 P3d 894 (2005) (noting that the defendant "expressly requested or cooperated with a number of delays, that together account for about three of the 15 months that passed between defendant's indictment and his motion to dismiss. We do not consider such delays in our 'reasonable period of time' analysis"); *State v. Hampton*, 152 Or App 742, 745, 954 P2d 1267 (1998) ("The dispositive inquiry under ORS 135.747 is whether defendant occasioned or acquiesced in the delay and whether the length of time that elapsed in bringing the case to trial was reasonable.").

*Fourth*, consistently with *Downing*, to establish a "waiver," the state must show either that the inmate-defendant was represented by counsel on the Oregon charges after the detainer was lodged or, if unrepresented, knew of the detainer and his or her rights under the IAD and knowingly failed to invoke Article III of the IAD.

*Fifth*, there is no evidence in this record that defendant was represented while incarcerated at the Gig Harbor facility until at least the summer of 2002. Conversely, evidence in the record could support differing inferences as to whether, or when, defendant had sufficient awareness of any detainer and of her rights under Article III of the IAD to be deemed to have knowingly failed to invoke Article III.

*Sixth*, consistently with *Downing*, if an unrepresented inmate knowingly fails to seek a final disposition of pending Oregon charges pursuant to Article III of the IAD, any period of delay following that failure will be attributed to the defendant's "consent" for purposes of applying ORS 135.747.

■ The logical and practical consequence of the foregoing considerations, in combination, is that defendant's entitlement to dismissal under ORS 135.747 depends on the resolution of two disputed factual matters: (1) When, if ever, did Multnomah County authorities lodge a detainer against defendant at the Gig Harbor facility? And (2) when, if ever, after the lodging of any detainer, did defendant, who was unrepresented, have a sufficient awareness of the detainer and of her entitlement under the IAD to request a final disposition of the Oregon charges? The resolution of those two questions will, in turn, determine the proper apportionment between the state and defendant of the 55-month period of delay between March 1998 and October 2002.

With respect to the first disputed issue, the state contends that the evidence permits a finding that a detainer was, in fact, lodged against defendant in July 1998. If, however, a detainer was not lodged at that time, or thereafter, the state offers no justification for that failure. *See, e.g., State v. Bigelow*, 197 Or App 441, 447-48, 106 P3d 162, *rev den*, 339 Or 544 (2005) (where the state knew the defendant's location, yet did not seek her extradition, or take any other measures

to take her into custody, dismissal on speedy trial grounds was proper). Thus, depending on the resolution of the first factual question, the period of unjustified delay might well be sufficient to compel dismissal under ORS 135.747. *See, e.g., Johnson*, 339 Or at 87 (unjustified 21-month interval before arraigning defendant held to be unreasonable); *Davids*, 339 Or at 101 (unjustified delay of 11 1/2 months to serve arrest warrant held to be "unreasonable").

The determination of the first factual question, if sufficiently unfavorable to the state, may obviate any need to resolve the second question. If, however, it is determined that a detainer was lodged against defendant in July 1998 or within a not "unreasonable" period thereafter, the state, in order to ascribe the subsequent period of delay to defendant's "consent," will still be obligated to establish that defendant possessed sufficient awareness of the existence of the detainer and of her rights under IAD Article III to have knowingly failed to avail herself of those rights. As noted, the record evidence could reasonably support differing inferences and determinations in that regard.

We cannot determine those dispositive disputed questions of fact for the first time on appeal. Nor, given the trial court's expressed rationale for rejecting defendant's speedy trial arguments, can we plausibly infer under *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), that the trial court, in denying dismissal, implicitly determined those facts.[14] *See State v. Herrera-Sorrosa*, 155 Or App 227, 229,

---

[14] In denying defendant's motion to dismiss for speedy trial violations, the court rendered the following, representative observations:

"THE COURT: Well, if she had served out her entire sentence [in Washington] and then the State had come back and filed a hold on her and brought her down here, and you would have brought all this in front of me, I would very likely rule that it was an unreasonable delay. But the fact that she is here now, now that she has complied with the requirements of the Interstate Agreement and Detainer Act, four years before her release date up there, you can argue about the loss of evidence separately, if you like. But as far as the unreasonable delay, I'm going to rule against your motion.

"* * * * *

"THE COURT: The problem you have, [Defense Counsel] is your client is here now and about to have a trial.

"* * * * *

"THE COURT: She refused at one point to be extradited, had to get a Governor's warrant. That's a reason for the delay. She tried to ask for a speedy

963 P2d 728 (1998) ("[W]e cannot infer that the trial court resolved disputed facts consistently with an analysis that it never considered[.]").

We thus vacate the judgment of conviction and remand to the trial court to determine, on the record previously developed, two matters: (1) When, if ever, did Multnomah County authorities lodge a detainer against defendant at the Gig Harbor facility? And (2) when, if ever, after the lodging of any detainer, was defendant informed of that detainer and of her ability under Article III of the IAD to request a final disposition of the Multnomah County charges? If, after having determined those matters on remand, the trial court determines that defendant was entitled to dismissal under ORS 135.747, it shall enter an appropriate judgment of dismissal. Conversely, if, after determining those matters, the trial court determines that defendant was not entitled to dismissal under ORS 135.747, it shall reenter the judgment of conviction.

Vacated and remanded.

---

trial. She didn't know how to do it and do it right. That's another cause for the delay. That's my ruling."