Submitted October 30, 2008, affirmed April 29, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JOSEPH IRVING COULOMBE,
aka Joseph I. Coulomb,
*Defendant-Appellant.*

Multnomah County Circuit Court
Z371394; A135951

206 P3d 1161

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for respondent.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

ROSENBLUM, P. J.

## ROSENBLUM, P. J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII), ORS 813.010. He assigns error to the trial court's denial of his motion to dismiss on speedy trial grounds under ORS 135.747.[1] Defendant failed to appear at a mandatory court appearance in 1996. A bench warrant issued, but defendant was not arrested for more than 10 years. The bench warrant was purged from the LEDS database in 2000 and was not reentered until 2005. Police officers ran a warrant check on defendant during that period and told him that it came back "clear." We conclude that neither of those events vitiated defendant's consent to the delay by virtue of his failure to appear. Accordingly, we affirm.

On June 28, 1996, defendant was arrested for DUII by Sergeant Kubic of the Multnomah County Sheriff's Office, cited, and released. The citation ordered defendant to appear at the district court in Gresham on August 6. Defendant failed to appear. A bench warrant for his arrest issued on August 9 and was entered into the LEDS and JAWS databases on September 29.[2] On November 17, defendant was arrested on the bench warrant. Before his release, he signed a release agreement in which he agreed "to appear at all times and places ordered by the Court until discharged or final order of the Court" and was informed that his next court date was November 18 at the Justice Center in Portland. Again, defendant failed to appear. A bench warrant issued on December 12 and was entered into the LEDS and JAWS databases on February 21, 1997.

In January 2000, the bench warrant was purged from the LEDS database.[3] Kubic testified that "there were

---

[1] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

[2] "LEDS" is an acronym for the Law Enforcement Database System; "JAWS" is an acronym for the Justice Automated Warrant System.

[3] January 2000 is the approximate date that the second bench warrant was removed from the LEDS database, as indicated on the Multnomah County Sheriff's

issues with LEDS and [warrants] were getting dropped out." He further testified that a hard copy of the bench warrant had remained active in the Sheriff's files and that the bench warrant "never disappeared. It was there. It was simply not accessible via the LEDS database."

At some point in 2001 or 2002, defendant and his roommate were involved in a confrontation with his roommate's brother. Defendant testified that Columbia County sheriff's deputies responded and that the deputies "took everybody's I.D. and numbers, then ran everybody through the system, and nothing came back." He further testified that he thought "that meant I didn't have any—I thought it was just gone." In that interaction, defendant did not tell the deputies about the unresolved DUII charge from Multnomah County. Nor did he call the Multnomah County Justice Center or Sheriff's Office to inquire about the status of his case.

On October 7, 2005, as part of a warrant review project conducted by the Multnomah County Sheriff's Office, the bench warrant was reentered in the LEDS database. On March 29, 2007, defendant was arrested on the bench warrant, ordered to appear at arraignment on March 30, and released. He appeared on March 30 and entered a plea of not guilty to the DUII charge. Defendant subsequently filed a motion to dismiss for lack of a speedy trial. The trial court held a pretrial hearing on the motion on May 10.

At the hearing, defendant asserted that he did not consent to the period of delay between January 2000 and October 2005, because the state was not actively pursuing the prosecution. Moreover, in 2001 or 2002, he argued, he was told by law enforcement that the warrant check was clear; thus, he did not know that there was any pending charge for him to turn himself in on. According to defendant, the period of time in which the bench warrant was not in the LEDS database could not be attributed to him, and the amount of time within that period after which defendant had been told by Columbia County Sheriff's deputies that a warrant check had come back clear was even more clearly attributable to the state.

---

Office's "Attempt Warrant Service Documentation" for the two bench warrants, which was introduced as an exhibit at the pretrial hearing.

The state responded by noting that it had made significant efforts to prosecute defendant and argued that the delay in defendant's trial was caused by his intentional failures to appear. The trial court concluded that defendant had consented to the delay by failing to appear, and it denied the motion to dismiss. Following a jury trial on May 10, defendant was convicted on the DUII charge. This appeal followed. Although defendant moved to dismiss on both statutory and constitutional speedy trial grounds, on appeal, he assigns error solely to the trial court's ruling under ORS 135.747.

In evaluating whether a defendant's statutory speedy trial rights were violated, our first task is to determine the amount of the delay that is attributable to the state—that is, the delay that the defendant did not request or consent to. *See State v. Spicer*, 222 Or App 215, 221, 193 P3d 62 (2008) ("If the defendant did not apply for or consent to a delay, that delay is part of the period included in the statutory calculation of reasonableness."). A defendant consents to a delay following his or her knowing failure to appear at a mandatory court appearance. *State v. Kirsch*, 162 Or App 392, 397, 987 P2d 556 (1999) ("[D]efendant's failure to appear and his subsequent inaction constituted consent to the delay at issue here."). Put another way:

> "In failing to keep the court apprised of his whereabouts, and in failing to appear in court, which required the issuance of a warrant for his arrest, defendant * * * consented not to have his trial set in the orderly course of the justice system, but rather to allow his case to languish in legal limbo."

*State v. McQueen*, 153 Or App 277, 282, 956 P2d 1046, *rev den*, 327 Or 554 (1998). If the delay attributable to the state is longer than "ordinarily would be expected," we determine the reasonableness of the delay by examining the "attendant circumstances." *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005).

The only delay for which responsibility is in dispute here is the period between January 2000, when the bench warrant was purged from the LEDS database, and October 7, 2005, when it was reentered. Defendant correctly concedes that he bears responsibility for the delays after his failures to

appear and before the second bench warrant was purged from the LEDS database.[4] *See State v. Gill*, 192 Or App 164, 168-69, 84 P3d 825, *rev den*, 337 Or 282 (2004) (concluding that the defendant consented to the delays following his knowing failures to appear at mandatory court appearances); *see also State v. Anglin*, 227 Or App 325, 206 P3d 193 (2009) ("the delay in bringing [the] defendant to trial was due to his failure to appear in the sole prosecution initiated by the state"). Therefore, we attribute to defendant the delays between August 6 and November 17, 1996, and between November 18, 1996 and January 2000. He also concedes that he is responsible for the delay between October 7, 2005, when the warrant was reentered into the LEDS database, and March 29, 2007, when he was arrested on the warrant.

The state, on the other hand, bears responsibility for the relatively brief delays following defendant's initial arrest in 1996 and preceding his trial in 2007. The state does not appear to contest the attribution of those delays, which total approximately three months.

We turn to the period of delay in dispute. Defendant acknowledges that, by failing to appear in court in November 1996, he implicitly consented to some delay in the prosecution of his case. He argues, however, that, for two reasons, he cannot be held responsible for part, if not all, of the delay in question. First, he argues that his failure to appear in court as required cannot be construed as implicit consent to having his case "utterly deleted from the normal procedural course of executing an arrest warrant." In other words, he contends that he did not consent to the state ceasing all efforts to further his prosecution. Thus, he argues that the state is responsible for the entire period in which the warrant was not in the LEDS database. Second, he argues that he cannot be held responsible for the delay after his interaction with the sheriff's deputies in Columbia County.

---

[4] Strictly speaking, the state is responsible for the one-day delay between his arrest on the first bench warrant on November 17, 1996, at which point his consent was deemed to be revoked, *see State v. Peterson*, 183 Or App 571, 573-74, 53 P3d 455 (2002) (concluding that the defendant's consent to a delay by failure to appear was revoked when the defendant reinitiated contact with the court), and his rescheduled arraignment the following day, for which defendant again failed to appear. The proper allocation of that delay obviously does not affect our analysis.

■ Defendant's argument that he did not consent to having his case removed from the "normal procedural course of executing an arrest warrant" is inconsistent with our prior case law. In *Kirsch*, we explained that a defendant's failure to appear and his or her subsequent inaction constitute consent to a delay of trial because it "demonstrate[s] that [the defendant does] not want to have his [or her] trial scheduled within the regular course of the justice system" but consents to having the case "languish in legal limbo." 162 Or App at 397 (internal quotation marks omitted). In short, contrary to defendant's assertion, his failure to appear constituted consent to the removal of his case from the "normal procedural course."

■ Defendant argues that this case is distinguishable from *Kirsch* because, here, the fact that the warrant was not listed in the LEDS database gives rise to the inference that the state was not actively attempting to further his prosecution. Defendant relies on *State v. Rohlfing*, 155 Or App 127, 963 P2d 87 (1988), in which we held that the state was responsible for an eight-year delay because, aside from one attempt to serve an arrest warrant for the defendant shortly after it issued, the state took no steps, such as entering the warrant in law enforcement databases, to arrest the defendant. *Rohlfing* does not aid defendant. In analyzing speedy trial issues under ORS 135.747, we focus on the period of delay that was beyond the defendant's control. *State v. Davids*, 339 Or 96, 101, 116 P3d 894 (2005). In *Rohlfing*, the delay did not follow a failure to appear by the defendant. There was no indication in the record that the defendant even knew that he had been indicted. *Rohlfing*, 155 Or App at 131. Because he did not know about the indictment or the warrant, he could not have forestalled further delay by contacting the court. Thus, the delay in that case was completely beyond the defendant's control. Here, defendant knew that the DUII charge was pending, so it was within his control to end the delay by reinitiating contact with the court. The fact that the state may not have actively attempted to further defendant's prosecution during the period in question does not diminish the facts that defendant consented to having his case "languish in legal limbo" and that he had the ability to move the case forward by contacting the court.

■ We turn to defendant's argument that he cannot be held responsible for the delay after he was told by the Columbia County sheriff's deputies that there were no outstanding warrants for his arrest, which also requires little discussion. Defendant contends that, after his contact with the deputies, he had no reason to believe that he should turn himself in or otherwise make contact with the court with regard to this case. In his view, any reasonable person in his position would have believed that, for whatever reason, the state had chosen not to pursue him further and that the matter was concluded.

We disagree. It may have been reasonable for defendant to believe that there was no outstanding warrant for his arrest, but we do not share his view that it was reasonable for him to infer that his case was concluded. If defendant wanted to revoke his consent to any further delay, it remained incumbent on him to contact the trial court and inquire about the status of his case.

Affirmed.