Argued and submitted July 29, 2010, affirmed June 1, 2011

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

CHARLES ELLIS COULSON,
aka Charles Ellis Coulson, Jr.,
*Defendant-Respondent.*

Multnomah County Circuit Court
021136941; A141228

258 P3d 1253

Paul L. Smith, Assistant Solicitor General, argued the cause for appellant. On the briefs were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Mary M. Reese, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

Brewer, C. J., concurring.

## HASELTON, P. J.

The state appeals, assigning error to the trial court's dismissal on statutory speedy trial grounds of an indictment against defendant on charges of unauthorized use of a vehicle (UUV), ORS 164.135 (Count 1); possession of a stolen motor vehicle, ORS 819.300 (Count 2); and first-degree theft, ORS 164.055 (Count 3). As explained below, our disposition turns primarily, but not exclusively, on the answer to the following question: When a defendant has been cited to appear and subsequently, but without his or her knowledge, has been indicted on charges arising from the same incident, does the defendant's failure to appear pursuant to the citation operate as "consent" for purposes of ORS 135.747 to a delay of trial on the indictment? We conclude that defendant did not consent to a delay of trial on the charges brought by indictment. Accordingly, we affirm.

The relevant facts are undisputed. On November 2, 2002, Portland Police Officer Price booked, cited, and released defendant for UUV, ORS 164.135, a Class C felony. The citation instructed defendant to appear in court on December 2, 2002, for arraignment. On November 19, 2002, the state indicted defendant on the UUV charge and two additional charges, possession of a stolen motor vehicle and first-degree theft, which are also Class C felonies, all stemming from the same incident for which defendant had received the citation. An arrest warrant on the indictment was issued that same day, but was withheld until defendant's scheduled court appearance on December 2.

On December 2, defendant did not appear, and the warrant on the indictment was reactivated. The Multnomah County Sheriff's Office entered the warrant into various computer databases on December 3, including the National Crime Information Center (NCIC), a national database managed by the Federal Bureau of Investigation (FBI). On December 9, the sheriff's office mailed a "Warrant Service Card" to the Portland Police Bureau's North Precinct requesting service of the warrant at defendant's last known address; the sheriff's office also sent a "Notice of Arrest Warrant" letter to that address. It is not clear whether the

Portland Police ever attempted to execute the warrant at defendant's address.[1]

Between September 18, 2003 and November 1, 2007, the sheriff's office received 10 separate notices through the NCIC indicating that defendant had been arrested in various locations throughout California. However, because the warrant for defendant's arrest was designated a "shuttle only" warrant, the state made no effort to extradite defendant.[2]

Ultimately, on May 15, 2008—nearly five and one-half years after he had failed to appear for his court date—defendant was arrested in Portland. He was arraigned on the indictment in this case one day later.

In June 2008, defendant moved to dismiss the indictment, raising constitutional and statutory speedy trial challenges. On November 4, 2008, defendant filed an amended motion to dismiss raising the same arguments. In his written motion, defendant argued, *inter alia*, that the delay of more than five years between his indictment and arraignment was substantially due to the state's "deliberate [and] intentional" failures to extradite defendant from California and that, because of those failures, defendant was "not brought to trial within a reasonable period of time," ORS 135.747.[3] The state

---

[1] The record includes a packet assembled by the sheriff's office documenting the warrant service attempts in this case. Included in that packet is the aforementioned "Warrant Service Card," which, on the back, contains a space for officers to document their attempts to serve the warrant. There are no attempts documented on the back of the card. Additionally, a memo included with the packet, which chronicles and explains the sheriff's office's conduct regarding the warrant, also does not note that any attempts at service were made.

[2] The "shuttle only" designation on defendant's warrant referred to a policy promulgated by the Governor's Office as a cost-saving measure. Under that policy, the state would generally not approve the extradition of fugitives, like defendant, accused of Class C felonies, unless they were apprehended in states where a cooperative shuttle arrangement existed to transport them to Oregon. California was not a "shuttle state" and, accordingly, a request by the county to extradite would only be considered on a "case-by-case basis" in certain circumstances, none of which apparently applied to defendant.

[3] ORS 135.747 provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

did not file a written response to either of defendant's motions.

The trial court heard argument on defendant's motion to dismiss on January 6, 2009. At that hearing, the state presented evidence establishing the facts described above; both Price, the officer who cited defendant, and the custodian of records for the sheriff's office testified. Defendant also testified and claimed that he had been unaware that he was obligated to appear in court on the citation, that an indictment had been issued, or that he was subject to an outstanding warrant on that indictment in Oregon.

Defense counsel argued that, because defendant did not knowingly fail to appear for his court date on the charges issued by indictment on December 2, 2002, defendant did not consent to any delay caused by that failure. Defense counsel further argued that, even if defendant could be said to have consented, the state had an obligation to extradite defendant once it learned of his first arrest in California, and that its repeated decisions not to extradite defendant over a period of years, justified solely on the basis of financial considerations, was unreasonable.

Relying principally on *State v. Kirsch*, 162 Or App 392, 987 P2d 556 (1999), the state advanced a single argument in opposition to defendant's motion. According to the state, because defendant knowingly failed to appear for his scheduled court appearance on December 2, 2002, he consented to the entire delay between December 2 and his ultimate arrest in May 2008. In other words, the state contended that, "because [defendant] consented to the delay due to that failure to appear, the amount of time that it took the State to serve the warrant * * * is immaterial."

After hearing all the evidence, the trial court expressed its understanding of the facts and its conclusions of law. With respect to whether defendant consented to a certain portion of the delay by failing to appear on December 2, 2002, the trial court found that, "because of the earlier citation," defendant "constructively, at least," knew that he had a court appearance on December 2, 2002. Based on that fact, the trial court implicitly concluded that defendant consented to at least some of the delay following his failure to appear.

Having made that initial determination, the trial court went on to consider whether the delay became attributable to the state after it received notice of defendant's arrests in California—and, if so, whether that subsequent delay was "reasonable." In that regard, the court concluded that, under *State v. Davids*, 339 Or 96, 116 P3d 894 (2005), "when [the state] get[s] the chance at [a defendant] they just can't wait until he returns to Oregon." Accordingly, the trial court determined that over nine months of the delay—the period between defendant's failure to appear on December 2, 2002 until September 18, 2003, the date the state first had an opportunity to extradite defendant from California—was attributable to defendant, whereas the balance of the delay until defendant's arrest in Oregon, nearly four years and eight months later, was attributable to the state.

Impliedly concluding that the total delay attributable to the state was not "reasonable" for the purposes of ORS 135.747, the trial court ruled:

"So I'm going to grant the motion on the statutory terms and dismiss the case. Based on my attempt to reconcile *Kirsch* and *Davids*, I think that the principle of *Davids*, which says [the state has] to make some effort when [it has] a chance to do it, and they had multiple chances here and failed to do it so I'm going to hold that the Speedy Trial Statute requires dismissal."

The trial court expressly declined to reach the constitutional grounds defendant raised in favor of dismissal. The state moved for reconsideration, and the court denied the motion. The trial court entered a judgment of dismissal on January 27, 2009, and the state appealed.

On appeal, the state renews its arguments that defendant consented to the entire period of delay between his failure to appear on December 2, 2002, and his arrest on May 15, 2008, and that the state's decisions not to extradite defendant did not vitiate that consent. The state further contends that the speedy trial protections in Article I, section 10, of the Oregon Constitution and the Sixth Amendment to the United States Constitution do not require dismissal of the indictment against defendant.

Defendant remonstrates that, assuming that he consented when he failed to appear for his court date on December 2, 2002, attribution for the period of delay after the state was first notified of his arrest in California (on September 18, 2003) reverts to the state because, in defendant's words, "a defendant's consent ends once his person is seized and is available for prosecution or because that consent is rendered inconsequential when the state has the power to move a prosecution forward." Accordingly, defendant contends, because the delay between that date, September 18, 2003, and defendant's arrest in Portland is unreasonable, the trial court's judgment of dismissal must be affirmed.

Defendant also makes two alternative arguments in favor of affirming the trial court's ruling. First, defendant contends that our decisions recognizing that a defendant may impliedly consent to a delay under ORS 135.747 by failing to appear are not viable under *State v. Adams*, 339 Or 104, 109, 116 P3d 898 (2005), where the Oregon Supreme Court stated that "mere failure to object" does not constitute "consent" and cited *State v. Chadwick*, 150 Or 645, 650, 47 P2d 232 (1935), *overruled in part on other grounds by State v. Crosby*, 217 Or 393, 342 P2d 831 (1959) (noting that, "where the statute refers to the consent of defendant, it means his express consent") in support.

Defendant's second alternative basis for affirmance centers on the contention that the citation, issued on November 2, 2002, and the indictment, issued on November 19, 2002, commenced separate prosecutions for the purposes of the speedy trial statute. As a result, defendant argues, although he failed to appear on the citation on December 2, 2002, that failure to appear does not constitute implied consent to delay of proceedings on the indictment, which defendant was never informed about. Accordingly, defendant urges, because his failure to appear on December 2 did not constitute consent to delay on the indictment, all of the delay between his failure to appear and his arrest is attributable to the state.

Although the parties raise arguments under ORS 135.747, as well as the state and federal constitutions, our

analysis begins and ends with the statute.[4] As noted, ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

As we explained in *State v. Coulombe*, 228 Or App 211, 215, 206 P3d 1161 (2009), "our first task is to determine the amount of the delay that is attributable to the state—that is, the delay that the defendant did not request or consent to." Next, "[i]f the delay attributable to the state is longer than 'ordinarily would be expected,' we determine the reasonableness of the delay by examining the 'attendant circumstances.' " *Id.* (quoting *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005)).

Here, the state concedes that, if we determine either that defendant did not consent to the delay following his failure to appear (as defendant advocates in his alternative bases for affirmance) or that defendant's consent to the delay was effectively vitiated when the state had an opportunity to extradite him from California (as the trial court essentially concluded), the delay thus attributable to the state would be unreasonable. Accordingly, we focus our inquiry on the first step in the analysis—that is, whether defendant requested or consented to *any* part of the delay.

In that regard, as a matter of discretion and logical coherence, we turn first to defendant's alternative bases for affirmance—*viz.*, whether a failure to appear may constitute "consent" for purposes of ORS 135.747 and, if so, whether the

---

[4] The order of our analysis in this case is somewhat atypical. As we have noted elsewhere, because a defendant is entitled to a dismissal with prejudice if he or she prevails on a speedy trial claim raised under Article I, section 10, or the Sixth Amendment, we usually consider those claims first. *See State v. Bayer*, 229 Or App 267, 277, 211 P3d 327, *rev den*, 347 Or 446 (2009). We do not do so here because the trial court expressly declined to reach defendant's constitutional arguments for dismissal, *see* 243 Or App at 262, and, thus, it did not resolve any of the factual issues material to such a determination (*e.g.*, factual matters pertaining to actual prejudice to the defense as a result of the delay). *See State v. Snyder*, 227 Or App 544, 552, 206 P3d 1083 (2009) (declining to resolve issue because trial court expressly declined to reach that issue and because the issue may involve disputed issues of fact).

indictment commenced an entirely new prosecution for the purposes of the speedy trial statute that abrogated defendant's consent to any delay effectuated by his failure to appear on the earlier citation. Pursuant to the "right for the wrong reason" doctrine, we may exercise our discretion to affirm the trial court on an alternative ground if the question presented is one of law and the reasons for the lower court's decision are either erroneous or, "in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance." *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001). Here, the alternative bases for affirmance present purely legal questions and, if we determine that defendant is correct on either basis, our conclusion in that respect would obviate any need to consider whether the trial court erred in concluding that the delay accruing after the state had an opportunity to extradite defendant from California is attributable to the state.

As a preliminary matter, we reject defendant's contention that, as an abstract matter, defendant's knowing failure to appear at a mandatory court appearance can never constitute "consent" to a delay under ORS 135.747. As defendant correctly observes, our case law, before and after the Oregon Supreme Court's decision in *Adams*, has held otherwise. Most recently, in *Coulombe*, we reiterated the rule that "[a] defendant consents to a delay following his or her knowing failure to appear at a mandatory court appearance." 228 Or App at 215 (citing *Kirsch*, 162 Or App at 397). Moreover, the Oregon Supreme Court's statement and citation in *Adams* that defendant invokes—*viz.*, that "'consent'" requires more than "a mere failure to object. * * * *See, e.g.*, *State v. Chadwick*, 150 Or 645, 650, 47 P2d 232 (1935) ('where the statute refers to the consent of defendant, it means his express consent')," 339 Or at 109—is not to the contrary. The Supreme Court in *Adams* did not purport to overrule or otherwise qualify our established case law on that subject, much less our statement in the underlying opinion, *State v. Adams*, 193 Or App 469, 473, 89 P3d 1283 (2004), *aff'd*, 339 Or 104, 116 P3d 898 (2005), which recognized that a defendant may "impliedly consent[ ] through some affirmative action, *i.e.*, fleeing the jurisdiction or appealing the

disposition of a pretrial motion." Most simply put, whereas a mere failure to object "conveys no message," *Adams*, 339 Or at 109, a knowing failure to appear at a mandatory court appearance is "affirmative action" that can communicate a defendant's consent.

We turn to defendant's second alternative basis for affirmance. As noted, that contention centers on the premise that two separate prosecutions were initiated in this case: one that was initiated by the citation, and another that was initiated by the indictment. Defendant asserts that any consent to delay attributable to his failure to appear as required by the citation on December 2, 2002, was consent to delay in the prosecution commenced by the citation—and does not constitute consent to delay in the prosecution at issue in this case, which, in defendant's view, was commenced by indictment.

In advancing that analysis, defendant principally invokes *State v. Purdom*, 218 Or App 514, 180 P3d 150 (2008). According to defendant, *Purdom* and the cases on which it relies, *State v. Hampton*, 152 Or App 742, 954 P2d 1267 (1998), and *State v. Schneider*, 201 Or App 546, 120 P3d 16 (2005), endorse the proposition that, "[f]or the purposes of ORS 135.747, a new charging instrument commences a new prosecution." It follows, defendant argues, that the state initiated a new prosecution when it filed the indictment in this case—a prosecution that defendant did not know about on December 2, 2002, and, thus, did not consent to the delay of, when he failed to appear on that date.

The state remonstrates that our decision in *State v. Anglin*, 227 Or App 325, 206 P3d 193, *rev den*, 346 Or 364 (2009), compels the opposite conclusion. In particular, the state contends that in *Anglin* we held "that [an] information was a continuation of the criminal action begun by the citation, and did not constitute the commencement of a *new* criminal action." (Emphasis in original.) The state argues that that same rule applies here; that is, just as the filing of an information or complaint following a citation did not commence a new prosecution in *Anglin*, so too the filing of an indictment following a citation did not commence a new prosecution in this case.

Anticipating the state's argument, defendant responds that our reasoning in *Anglin* is limited to the circumstance in which a citation is followed by a complaint or information, and does not extend to indictments, which are treated separately in the statutory scheme. Alternatively, defendant contends, our holding in *Anglin* was implicitly overruled by our decision in *State v. Bayer*, 229 Or App 267, 278-79, 211 P3d 327, *rev den*, 347 Or 446 (2009), in which we held, relying on *Purdom*, that an information, filed after a citation was issued and then dismissed, was the appropriate starting point for calculating a period of delay under the speedy trial statute.

As explained below, we agree with defendant. Or rather, and more particularly, we agree with defendant that, whatever the proper relationship between *Anglin* and *Bayer* (both of which involved the filing of an information following the issuance of a citation), where a defendant fails to appear pursuant to a citation without knowledge of a subsequent *indictment*, that failure to appear cannot constitute consent to delay of trial of the offenses charged by the indictment. Our conclusion in that regard comports with precedents addressing the effect of the issuance of an original (or subsequent) indictment on the proper application of ORS 135.747.

We begin with *Johnson*, where the Oregon Supreme Court addressed when a period of delay begins for statutory speedy trial purposes. 339 Or at 91-92. There, the state argued that the period began on the date that the defendant was arraigned on the indictment, as opposed to the date the indictment was issued, which occurred 21 months earlier. Relying on the text and context of ORS 135.747, the court disagreed:

> "[W]e again turn to the *PGE* [*v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993),] analytical paradigm. At the text and context level of that paradigm, we conclude that, with respect to the issue of the temporal scope of the speedy trial right, the text of ORS 135.747 is at least strongly suggestive of the answer. Specifically, ORS 135.747 pertains '[i]f a defendant *charged with a crime* * * * is not brought to trial within a reasonable period of time.' Presumably, that means that, once a defendant stands 'charged with a crime,' his or her trial must take

place within a reasonable period of time. Although there may be room for debate with respect to the range of actions that the legislature intended by the term 'charged,' there can be little doubt that a defendant who has been indicted by a grand jury has been 'charged with a crime' within the meaning of the statute."

339 Or at 92 (omission and emphasis in *Johnson*).

Thus, consistently with *Johnson*, the "clock" for purposes of ORS 135.747 starts when a defendant is "charged with a crime," *e.g.*, when a defendant is indicted, *Johnson*, 339 Or at 92, or when a defendant is charged in another form of accusatory instrument, such as an information or complaint.[5] *See, e.g.*, *Adams*, 339 Or at 106-07, 110 n 5 (beginning speedy trial calculation with issuance of complaint); *State v. Davis*, 236 Or App 99, 107-08, 237 P3d 835 (2010) (calculating delay for speedy trial purposes starting with date of the initial information). A citation, which may incorporate a complaint, *see, e.g.*, ORS 133.066(1),[6] may also start the clock for speedy trial purposes in certain circumstances. *See State v. Peterson*, 183 Or App 571, 574, 53 P3d 455 (2002).

Our cases further establish that, where multiple accusatory instruments are issued in the context of a criminal case, the clock for purposes of calculating the relevant period of delay in bringing a defendant to trial will "start anew"[7] whenever a new accusatory instrument is issued following the dismissal of an earlier accusatory instrument. *Purdom*, 218 Or App at 522-23; *Bayer*, 229 Or App at 278. Thus, in *Purdom*, we held that the date an indictment was issued, following the dismissal of an earlier indictment, was

---

[5] Indeed, as the Oregon Supreme Court noted, when the legislature amended ORS 135.747 and the other speedy trial statutes as part of its overhaul of the Criminal Procedure Code in 1973, it replaced the term "indicted" in ORS 135.747 with the term "charged" and the term "indictment" with "accusatory instrument" "to take into account the possibility of charging a defendant by information, rather than indictment." *Johnson*, 339 Or at 81 n 8.

[6] ORS 133.066(1) provides, in part, that "[a] criminal citation may include a complaint or may be issued without a form of complaint."

[7] We employ "start anew," rather than "restart"—the terminology favored by the state—because the latter is arguably ambiguous and misleading. In time-limited athletic contests, "restarting" the clock is commonly understood to mean continuing elapsed time from the point of a cessation of play (*e.g.*, a time-out or clock stoppage for injury). "Start anew" means "beginning all over again."

the correct starting point for calculating whether the defendant had been brought to trial within a "reasonable period of time," ORS 135.347. 218 Or App at 522-23. Likewise, in *Schneider*, 201 Or App at 549-51, we concluded that the correct starting point for calculating a delay for statutory speedy trial purposes was the date of indictment, which followed, in succession, the issuance and dismissal of a citation and the issuance and dismissal of a complaint. However, where an information is amended—and, thus, does not issue following the dismissal of a previous accusatory instrument—the amendment will not start the clock anew for purposes of calculating a delay under the speedy trial statute. *Davis*, 236 Or App at 108 (using date of initial information as starting point for calculating delay for speedy trial purposes and reasoning that there "was no dismissal of any information in this case; the same information was continued with very slight changes, and the rule in *Purdom* does not apply").

In that context, as noted, the parties dispute the meaning and import of *Anglin*. In *Anglin*, the defendant was involved in an automobile accident on October 5, 1997, and, as a result, received citations for driving under the influence of intoxicants (DUII) and reckless driving, which directed him to appear in court on those charges on October 22, 1997. 227 Or App at 327. On October 22, the district attorney filed an information charging the defendant with those same offenses—DUII and reckless driving—and an additional offense, recklessly endangering another person, predicated on the same incident. *Id.* The day before, the district attorney had stamped the two citations "PROSECUTION DECLINED." *Id.* (capitalization in original). The defendant did not appear in court on October 22, 1997, and a bench warrant was issued. *Id.* That bench warrant was never executed. Rather, the defendant reactivated the proceedings in 2006 by turning himself in. *Id.* at 327-28.

On appeal in *Anglin*, we focused on two analytically distinct substantive issues: a statute of limitations issue, *see* ORS 131.125(6)(b) (providing that a prosecution for a misdemeanor "must be commenced" within two years), and a speedy trial issue under ORS 135.747. 227 Or App at 328, 332. We first addressed the defendant's argument that the prosecution for his offenses had not been commenced within

the operative two-year statute of limitations. *Id.* at 328. That contention was, in turn, based on the defendant's assertion that the state's prosecution against him had not been timely "commenced" for purposes of ORS 131.135[8] because the later-filed information had terminated the prosecution commenced by the earlier-executed citations and a "warrant or other process" with respect to the information had not been "executed without unreasonable delay," ORS 131.135. *Id.* Thus, in the defendant's view, because the state had never executed the warrant arising from his failure to appear on the information, his prosecution was never "commenced" within the meaning of ORS 131.135. *Id.* The state remonstrated that the criminal citation constituted "other process" that commenced the prosecution within the meaning of ORS 131.135. *Id.*

We agreed with the state. In so holding, we noted that "[t]he purpose of criminal statutes of limitations is to provide notice to a defendant of a pending prosecution" and concluded that, as an initial matter, the citations "were 'other process' * * * sufficient to commence a prosecution" for purposes of ORS 131.135. *Id.* at 328-29. We also held that the state's action of declining prosecution on the citations and filing the information did not recommence the prosecution for statute of limitations purposes. *Id.* at 329-32. In reaching that conclusion, we considered the statutory relationship between a criminal citation and an information, ultimately determining that that relationship demonstrated that "the legislature did not anticipate that a later-filed information would terminate one prosecution and commence another." *Id.* at 330. We concluded:

"In short, the statutory scheme governing criminal citations and the record in this case—including the information's specific reference to the earlier-issued citations—demonstrate that defendant was prosecuted only once and that the prosecution began with execution of the criminal citations. Moreover, that conclusion is consistent with the notice purpose of criminal statutes of limitations: Defendant was aware that the state was proceeding criminally

---

[8] ORS 131.135 provides:

"A prosecution is commenced when a warrant or other process is issued, provided that the warrant or other process is executed without unreasonable delay."

against him when he was handed the citations the day of the accident."

*Id.*

　　We then turned to the defendant's arguments under the speedy trial statute, ORS 135.747. In that regard, the defendant argued that he did not "consent" to the delay in his case by failing to appear because his failure to appear was in a "different" prosecution—the one commenced by the citations—as distinguished from the prosecution that led to his conviction, which (in the defendant's view) was initiated by the information. *Id.* at 332. Referring to our analysis regarding the defendant's statute of limitations challenge, we rejected the reasoning underlying the defendant's speedy trial argument:

> "[D]efendant's argument rests on the same premise on which his statute-of-limitations argument rests—*that is, that filing the information terminated one prosecution and commenced another. We already have rejected that premise. Thus, the question is whether defendant consented to a delay in the single prosecution that commenced with issuance of the citations and that led to his conviction.*"

*Id.* at 333 (emphasis added). Ultimately, we concluded that "the delay in bringing defendant to trial was due to his failure to appear in the *sole prosecution* initiated by the state." *Id.* at 334 (emphasis added).

　　As noted, defendant asserts that our subsequent decision in *Bayer* is at odds with our conclusion in *Anglin. See* 243 Or App at 267. In *Bayer,* the defendant was cited for DUII, but the citation was dismissed three weeks later. 229 Or App at 271. Eight months after the citation was dismissed, the state filed an information for DUII pertaining to the same incident that gave rise to the original citation. *Id.* Eventually, defendant filed a motion to dismiss the charges against him for lack of speedy trial. *Id.* at 272. One of the issues on appeal was whether the appropriate starting point for calculating the period of delay for speedy trial purposes was the date of the original citation or the date of the subsequently filed information. *Id.* at 278. Relying on *Purdom,* and without reference to *Anglin,* we concluded that the "prosecution commence[d]" on the date of the information, and thus

the date of the information "is the appropriate starting point for calculating the delay" for purposes of ORS 135.747. *Bayer*, 229 Or App at 278-79.

In this case, we need not resolve any purported conflict between *Anglin* and *Bayer*. That is so because we agree with defendant that, even if a prosecution commences for speedy trial purposes with the issuance of a citation, as opposed to an information, in this case the *indictment* began a new prosecution for speedy trial purposes. *See, e.g., Schneider*, 201 Or App at 551-52.

As we discussed in *Anglin*, the statutes governing the procedures that obtain following an issuance of a citation demonstrate that the legislature assumed "that a complaint or information would be issued in the same case (or to use the statutory language, the same 'criminal action') as the citation." 227 Or App at 330; *see also, e.g.*, ORS 133.060(2) (providing that a warrant shall be issued if a person fails to appear as directed in the citation "and a complaint or information is filed"); ORS 133.068(7) (stating that the citation issued without a complaint must include a notice that a warrant will be issued if the person does not appear as directed "and a complaint or information has been filed" (capitalization omitted)). The statutes governing citations, however, make no reference to indictments. Indeed, indictments are governed by entirely separate procedures, which are set out in an entirely separate chapter in the Oregon Revised Statutes. *See* ORS ch 132. In short, whereas a citation and an information *may* merely mark different sequential events in a "single prosecution," *Anglin*, 227 Or App at 333, no similar relationship exists between citations and indictments.

Here, defendant received a citation directing him to appear in court on December 2, 2002. The state, however, did not file a complaint or information based on that citation. Rather, on November 19, 2002, the state initiated a separate prosecution based on an indictment. The state issued a warrant on that indictment, but withheld execution of the warrant until defendant's scheduled court appearance on December 2. Accordingly, when defendant failed to appear on December 2, 2002, he had no notice that an indictment had

been issued against him—or, indeed, of any prosecution separate from the one that the state had initiated by citation and then abandoned. Absent such notice, defendant cannot be deemed to have consented to the delay in this case, which was based on the indictment. *Cf. State v. Bigelow*, 197 Or App 441, 446, 106 P3d 162, *rev den*, 339 Or 544 (2005) (accepting state's concession that the defendant neither caused nor consented to delay where the "[d]efendant had no knowledge of the indictment or the outstanding warrant until she was arrested"); *State v. Rohlfing*, 155 Or App 127, 131, 963 P2d 87 (1998) (the defendant did not consent to delay where "there is no evidence that he was aware that he had been indicted or that he moved or left the state to avoid arrest").[9]

In sum, defendant did not consent to any of the delay between his nonappearance on December 2, 2002, and his apprehension in Oregon on May 15, 2008. Accordingly, the trial court correctly dismissed the prosecution based on the indictment on statutory speedy trial grounds.

Affirmed.

**BREWER, C. J.,** concurring.

I agree with the majority's analysis and the result that it reaches in this case. I write separately to emphasize my disagreement with defendant's argument that our decisions in *State v. Anglin*, 227 Or App 325, 206 P3d 193, *rev den*, 346 Or 364 (2009), and *State v. Bayer*, 229 Or App 267, 211 P3d 327, *rev den*, 347 Or 446 (2009), are inconsistent with each other and that, without citing *Anglin*, we nevertheless implicitly overruled our decision in that case three months later in *Bayer*.

The short answer to defendant's argument is that, in *Anglin*, unlike in *Bayer*, the state did not dismiss a previously

---

[9] Indeed, to impute such an "anticipatory consent" to a defendant would be to deny criminal defendants the same benefit the state enjoys under ORS 137.747 upon issuance of a new charging instrument. As noted, the issuance of a new charging instrument has the effect of starting the statutory speedy trial "clock" anew, wiping the slate clean of any previous period of state-caused delay, however unreasonable. If, however, "anticipatory consent" were apposite, a defendant's prior conduct, pertaining to the now-superseded prosecution, would continue to be given effect as excusing the state's continuing failure to bring the "re-charged" matter to trial.

filed citation before filing an information on the same charge. In *Bayer*, the trial court had dismissed the original citation, and eight months later, the state filed an information charging the defendant with the same offense. 229 Or App at 271. It followed, we concluded, that, for statutory speedy trial purposes, the relevant prosecution commenced with the second charging instrument. *Id.* at 278.

In *Anglin*, by contrast, the underlying citations were not dismissed when, on the same day that the citations required the defendant to appear in court, the district attorney "filed an information charging [the] defendant with the same offenses that he already had been cited for[.]" 227 Or App at 327. The information "included references to the citation numbers, again indicating that the information was intended by the district attorney to be part of the prosecution that was commenced by execution of the citations." *Id.* at 330. As a consequence, we concluded that, for speedy trial purposes, the defendant's failure to appear on the citations was a relevant consideration in evaluating whether the defendant had consented to the delay in his ultimate prosecution on the information. *Id.* at 332-33. In short, in *Anglin*, there was a single, continuous, prosecution whereas, in *Bayer*, there were two. Hence, the decisions in those cases are harmonious.