Argued and submitted November 26, 2013, vacated and remanded May 29, petition for review denied September 11, 2014 (356 Or 163)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES MICHAEL BROWN,
*Defendant-Appellant.*

Washington County Circuit Court
D0006772T; A150256

328 P3d 699

Elizabeth G. Daily, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Michael A. Casper, Deputy Solicitor General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

Defendant appeals a judgment of conviction for driving while suspended (DWS), ORS 811.182(4), raising three assignments of error. We reject defendant's second and third assignments of error without discussion. In his first assignment of error, defendant argues that the trial court erred when it denied his motion to dismiss on statutory speedy trial grounds. As explained below, the record suggests that the trial court applied an incorrect legal standard when it denied defendant's motion to dismiss. Because application of the correct legal standard would require the trial court to make factual findings that it appears not to have already made, either explicitly or implicitly, we vacate defendant's conviction and remand with instructions.

On August 16, 2000, a police officer issued defendant a citation for DWS. That citation directed defendant to appear in court on August 29, 2000. Defendant did not appear in court on the scheduled date, and the court issued a warrant. The state made an unsuccessful attempt to serve the warrant in 2003 before successfully serving it in July 2011. Defendant filed a pretrial motion to dismiss under *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1,[1] arguing that "there has been an unreasonable delay between the charging of these offenses and trial, which the defendant did not cause and to which he did not consent." At the 2011 hearing on that motion, defendant testified that he had spoken to a court clerk the day before his scheduled

---

[1] *Former* ORS 135.747 provided:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In 2013, the legislature passed a law that provides, in part, "ORS 135.747 is repealed on April 1, 2014." Or Laws 2013, ch 431, § 1. In 2014, the legislature passed Senate Bill 1550, which specifies new time limits within which trial must commence on criminal charges. Those new speedy-trial provisions "apply to proceedings in which a motion for dismissal under section 3 [of the bill] is filed on or after April 1, 2014." SB 1550 § 4 (2014).

As we hold today in *State v. Straughan (A147718)*, 263 Or App 225, 235, 327 P3d 1172 (2014), the repeal provision does not apply to pending appeals from cases in which the trial court denied defendants' motions to dismiss under *former* ORS 135.747. Accordingly, we resolve this appeal by applying *former* ORS 135.747.

August 2000 court appearance and believed he was not required to appear the next day because charges had not yet been filed against him:

> "[I]t was the afternoon before the morning where I was supposed to be and I couldn't make it that next day, so I wanted to go down there and appear. And I talked to the clerk, and she said that they had no—nothing filed, knew no knowledge about it. Because I had my copy of the citation. And she told me that several times previously in the weeks before that, that this had happened several times, and things just didn't get filed.
>
> "And so, I was kind of under the impression at that, that it didn't make it as far as—I didn't know there was a warrant out on that."

The record shows that the state filed the charges against defendant the day before his scheduled appearance—the same day on which, according to defendant, he had spoken with the court clerk.

At the hearing on defendant's motion, both parties agreed that the citation provided defendant with notice of his obligation to appear in court on August 29, 2000. Their disagreement centered on whether a subsequent event—defendant's interaction with the court clerk—excused his failure to appear for purposes of the statutory speedy-trial analysis. Defendant argued that, under *State v. Coulson*, 243 Or App 257, 258 P3d 1253 (2011), "there is no *per se* rule that a Failure to Appear equals consent"; under the circumstances, he argued, his conversation with the clerk effectively negated the notice of his obligation to appear. The state argued that the conversation with the court clerk was irrelevant because defendant had received actual notice of the hearing from his citation and therefore knowingly failed to appear. According to the state, under *State v. Anglin*, 227 Or App 325, 206 P3d 193, *rev den*, 346 Or 364 (2009), "whether he went and spoke with someone or not isn't really at issue, because at the end of the day he had a date to come in and find out if we were filing charges or not."

The trial court denied defendant's motion, agreeing with the state that *Anglin* controlled:

"THE COURT: As far as the historical facts, the Court accepts the State's witnesses, the Court accepts the Defendant's statements about where he lived, and the legal analysis is as follows: * * * I think it's a three-part test. Did defendant cause or consent to the delay? Was the delay reasonable—excuse me, or unreasonable? And if it was unreasonable on the surface, is—or are there sufficient reasons to permit the case to continue? And some of the cases combine the second and third thing.

"But the lawyers both concur that two and three are not really controlling here, because *if the Defendant did not consent, the delay was unreasonable, there's no good cause advanced.*

"So, it boils down to, in this particular case, did the Defendant cause the delay?

"* * * * *

"On the one hand, I think a clerk can say anything, and I've said that before. On the other hand, it's a little bit suspicious, this particular recitation 11 years later. But, *be that as it may, the citation says, 'Your court appearance date and location are August 29th, 8:30 a.m. * * *.'*

"The defendant did not appear August 29th at 8:30 a.m. Nor did he * * * even request a continuance on August 28th, which he could have done if he wanted to, and so he did fail to appear.

"And I have to admit, that in reading all this stuff and being re-educated—because I'm a little rusty on speedy trial—that *Anglin* appears to be controlling.

"* * * * *

"So I would deny the motion."

(Emphasis added.) After the trial court denied the motion, defendant was convicted of DWS following a bench trial.

On appeal, both parties acknowledge that the trial court did not apply the correct statutory speedy-trial analysis as the Supreme Court explained it in *State v. Glushko/Little*, 351 Or 297, 266 P3d 50 (2011), which was decided eight days before the trial court's ruling. Under *former* ORS 135.747—at issue in *Glushko/Little*—courts applied a two-step analysis in determining whether a defendant was

entitled to dismissal under *former* ORS 135.747 because of unreasonable pretrial delay. "First, we determine[d] the relevant amount of delay by subtracting from the total delay any periods of delay that the defendant requested or consented to; second, we determine[d] whether that delay was reasonable." *State v. Mercier*, 259 Or App 222, 226, 313 P3d 322 (2013).

The Supreme Court explained in *Glushko/Little* that a defendant's knowing failure to appear for a scheduled court hearing was relevant to the second part of that analysis, *i.e.*, the reasonableness of the delay. 351 Or at 316. Previously, this court had held that a defendant's knowing failure to appear at a mandatory court appearance was relevant to the first part of the analysis because it amounted to delay to which the defendant had consented—and therefore was not included in the delay subject to the reasonableness analysis in the second part of the test. *See, e.g.*, *Coulson*, 243 Or App at 265 (citing cases); *id.* at 272-73 (the defendant could not have consented to delay when he did not have *notice* that an indictment had been issued against him); *State v. Bigelow*, 197 Or App 441, 446, 106 P3d 162, *rev den*, 339 Or 544 (2005) (accepting state's concession that the defendant neither caused nor consented to delay where the defendant "had no knowledge of the indictment or the outstanding warrant until she was arrested"). Thus, both the law as explained in *Glushko/Little* and the analysis that we applied in earlier cases took into account whether any failure to appear by a defendant was "knowing" and, therefore, excused pretrial delay either because the delay was reasonable (*Glushko/Little*) or was delay to which the defendant was deemed to have consented (the pre-*Glushko/Little* analysis).

In this case, defendant does not focus on how *Glushko/Little* shifted the part of the speedy-trial analysis to which the "knowing failure to appear" question is relevant. Rather, defendant makes a factual assertion that is significant under *Glushko/Little* and that also would have mattered under our earlier case law: based on his own testimony at the dismissal hearing, he claims that he did not *knowingly* fail to appear for his originally scheduled court

date of August 29, 2000, because the court clerk's statement to him on August 28 led him to believe that he did not need to appear the next day. Under *Glushko/Little*, defendant contends, the pretrial delay was unreasonable and the case should have been dismissed.

The state responds that defendant's reliance on his own testimony is misplaced. The state first argues that the trial court was not required to, and did not, credit defendant's "self-serving testimony." We understand the state to suggest that the trial court implicitly found defendant's testimony on that point not to be credible. The state also argues that "defendant's claim fails even accepting his testimony" about the court clerk's statements because, in the state's view, "[d]efendant just erroneously and unreasonably assumed that the charge would not be filed." The state acknowledges that the trial court erroneously "ruled that, by failing to appear, defendant consented to the delay," but argues that we "can and should affirm under the 'right for the wrong reason doctrine'" because defendant's failure to appear made the pretrial delay reasonable. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining "right for the wrong reason" doctrine).

Defendant responds that we cannot affirm on that alternate basis because the trial court did not implicitly find his testimony about the court clerk's statements not to be credible. In his view, "the trial court utilized an incorrect legal standard" and "the record establishes that the trial court did *not* decide the fact in the manner suggested." (Emphasis in original.)

Because the trial court erred by rejecting defendant's dismissal motion on the ground that he consented to the delay caused by his failure to appear in August 2000, we can affirm only if the trial court's ultimate ruling—the dismissal—was correct for a reason other than the one that the court articulated. We can affirm on that kind of "right for the wrong reason" basis only if certain conditions are met. *Outdoor Media*, 331 Or at 659-60. One of those conditions is that "the evidentiary record must be sufficient to

support the proffered alternative basis for affirmance." *Id.* at 659.

> "That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance; and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a different record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance."

*Id.* at 659-60 (emphasis omitted).

Applying that analysis, we consider whether the trial court explicitly or implicitly found facts that are sufficient to support affirmance on the alternate ground that the pretrial delay was reasonable. In *Glushko/Little*, the Supreme Court found that the delays in bringing two defendants to trial were reasonable because the defendants caused the delays by knowingly failing to appear. 351 Or at 316. But the Supreme Court did not apply a mechanical test, by simply noting that the defendants "had notice that they were legally obligated to appear." *Id.* Rather, the court emphasized that the determination of whether pretrial delay was "reasonable" under ORS 135.747 required "an examination of 'all the attendant circumstances of the delay,'" particularly those circumstances that *cause* the delay. *Id.* at 315-16 (quoting *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005)). Accordingly, the *Glushko/Little* court also considered other associated facts, including that the defendants had been informed "that failure to appear would result in a warrant for their arrest being issued." *Id.* at 316. Based on those facts, the court concluded that "there [was] no question but that both defendants caused the delays in bringing their cases to trial by their failures to appear." *Id.* We understand the Supreme Court's focus on "all of the attendant circumstances" to mean that a defendant's receipt of a citation that commands that the defendant appear in court on a

particular date does not always, by itself, establish conclusively that the defendant's subsequent failure to appear on that date was "knowing."

We recently applied similar principles in a somewhat different context in *State v. Kenny*, 262 Or App 702, 327 P3d 548 (2014), which involved a defendant's conviction on a charge of failure to appear on a criminal citation. The defendant appealed, arguing that the trial court erroneously excluded evidence that, after visiting the district attorney's office and the police department about the citation, she believed that she was not being charged and did not have to appear in court. *Id.* at 709-11. We agreed, and we reversed and remanded the case, explaining that the defendant's "proffered testimony met the low threshold for relevance under OEC 401 because it tended to negate her knowledge that she was obligated to appear on [the date on the citation]." *Id.* at 712. We recognize that the analysis of whether a defendant committed *the crime* of failure to appear by not showing up for a scheduled court proceeding may not coincide, in all respects, with the analysis of whether a defendant's failure to appear makes subsequent pretrial delay reasonable. But *Kenny* reflects a principle common to both analyses: that a court must consider "all of the attendant circumstances" when determining whether a defendant's failure to appear was "knowing."

Returning to this case, although the trial court made no explicit findings about whether defendant "knowingly" failed to appear, the state argues that because the trial court denied defendant's motion, the court must have implicitly resolved that issue in the state's favor. Under *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), we will, in some circumstances, presume that the trial court decided disputed facts consistently with its ultimate conclusion. However, such presumptions are "necessarily dependent on the trial court's application of the correct legal analysis. If the court is operating under a misunderstanding as to the applicable legal principles[,] * * * we will not infer that the court decided facts consistently with that erroneous legal construct." *State v. Ellis*, 252 Or App 382, 390, 287 P3d 1215 (2012), *rev den*, 353 Or 428 (2013).

Although we know that the trial court applied pre-*Glushko/Little* law, we would not reverse solely on that basis, if the court had made the findings necessary to the *Glushko/Little* analysis. *See, e.g., State v. Baranovich*, 254 Or App 98, 103-04, 295 P3d 58 (2012), *rev den*, 353 Or 747 (2013) (taking that approach). For two reasons, we conclude that the trial court did not make the necessary findings. First, the trial court declined to determine explicitly whether defendant was being truthful when he said that the court clerk told him—on the day before his scheduled appearance—that no charges had been filed and that, "in the weeks before that, that this had happened several times, and things just didn't get filed." Although the court commented that defendant's testimony was "a little bit suspicious," it went on to say, "[b]ut, be that as it may," the citation included the date and location of the court appearance, suggesting that the court believed that the notice provided by citation was *all* that mattered to the speedy-trial analysis. Thus, the court's explicit statements suggest that it did not take into account "all attendant circumstances," as *Glushko/Little* and *Kenny* require.

Second, we are not persuaded that the trial court *implicitly* made the findings about defendant's knowledge of his duty to appear that are necessary to the *Glushko/Little* analysis. At the hearing on defendant's dismissal motion, the state argued that, because defendant had notice of his court hearing, his purported conversation with the court clerk was irrelevant and his failure to appear "equal[ed] consent." In making that argument, the state relied heavily on our decision in *Anglin*. The trial court also relied on *Anglin*, agreeing with the state that "*Anglin* appears to be controlling." The difficulty with the court's reliance on *Anglin* is that the defendant's state of mind was not at issue in that case in the same way that it is here; that is, the *Anglin* defendant does not appear to have contended that events following his citation reasonably led him to believe that he did not have to appear on his scheduled court date. Indeed, perhaps because *Anglin* did not involve a dispute over the defendant's mental state, our opinion repeatedly uses the shorthand phrase "failure to appear" in discussing the speedy-trial analysis, 227 Or App at 333, without describing

the additional requirement that the failure be "knowing" to constitute (under then-existing case law) consent to pretrial delay. Thus, *Anglin* could be read to incorrectly suggest that *any* failure to appear by a defendant—even one that was not "knowing"—constituted the defendant's consent to subsequent delay. Accordingly, we will not infer that, in applying *Anglin*, the trial court implicitly made findings that defendant's failure to appear was "knowing" in a way that was not (to use defendant's word) "negated" by other "attendant circumstances."

In short, we decline to affirm the trial court's decision under the "right for the wrong reason" doctrine because the record does not support a determination that the trial court explicitly or implicitly made the findings that would be necessary to support affirmance under *Glushko/Little*. We therefore vacate the judgment of conviction and remand for further proceedings.

That result raises the question of what law the trial court should apply on remand. As noted, we have applied the provisions of *former* ORS 135.747 in resolving defendant's appeal. *See* 263 Or App at 264 n 1. On remand, however, the analysis of what law applies may be different. Defendant asserts that, in case of a remand, *former* ORS 135.747 should continue to apply "because the trial court would merely be adjudicating a dismissal motion filed before the repeal took effect." The state does not explicitly take a position on what speedy-trial provisions would apply in case of a remand, but simply asserts that, if we remand, "the parties can litigate, and the trial court can determine, which statute would govern at that point."[2] We agree with the state.

Although the question of what statute will apply on remand in this case ultimately will present an issue of law, it would be premature for us to address the issue now. As explained above, we are remanding the case because the trial court did not make factual findings regarding whether defendant *knowingly* failed to appear for his hearing on

---

[2] We note, however, that the state also asserts that, in cases pending in the trial court on or after April 1, 2014, in which a speedy-trial motion has been filed but not yet resolved, "the defendant must refile a motion under the new speedy-trial statute, and the trial court must apply that statute."

August 29, 2000. It is possible that, on remand, the parties will agree on which version of the speedy-trial legislation should apply to petitioner's case. Even if that point is disputed, the trial court may make factual findings regarding defendant's mental state at the time he failed to appear— or about other attendant circumstances—that obviate any need for the court to determine *which* version of the speedy-trial statute applies to defendant's case. That is, the trial court could make findings sufficient to establish either that (1) defendant would be entitled to dismissal on speedy-trial grounds under *both* versions of the law, or (2) defendant is not entitled to dismissal under *either* version of the law. Because this case ultimately may be resolved in a way that does not require a judicial determination of which speedy-trial statute applies in the somewhat unusual procedural circumstances involved in this case, we decline to address that question now.

Vacated and remanded.